UNITED STATES, Appellant

v.

VICTOR M. VANDERPOOL, Master Sergeant, U. S. Air Force, Appellee

4 USCMA 561, 16 CMR 135

563

Lt Col Harold Anderson, USAF, and Maj Stephen E. Ware, USAF, for Appellant.

Col A. W. Tolen, USAF, and Capt D. L. Carhart, USAF, for Appellee.

## Opinion of the Court

Paul W. Brosman, Judge:

This case is before us on certificate by The Judge Advocate General, United States Air Force, pursuant to the provisions of the Uniform Code of Military Justice, Article 67(b)(2), 50 USC § 654. Following a rehearing, Vanderpool was convicted of several offenses —the nature of which is unimportant —growing out of the alleged theft of post exchange cigarettes and their sale to an unauthorized Okinawan National. The findings of guilty and—with some modification—the sentence were approved by the convening authority. However, the conviction was set aside by a board of review and the present certificate followed.

The accused was originally tried and convicted on October 4, 1952, by a general court-martial convened in Okinawa. On April 30, 1953, an Air Force board of review set aside the findings and sentence, and ordered a rehearing on the ground that the law officer had abused his discretion in denying the accused's application for a continuance, requested for the purpose of perfecting an appeal from the decision of the convening authority to the effect that a certain officer sought by the accused as individual counsel was not reasonably available. United States v. Vanderpool, 10 CMR 664. The rehearing was conducted before a general court-martial convened on August 11, 1953, at Hamilton Air Force Base, California. At that time the principal evidence for the Government consisted of the testimony of certain witnesses called at the original trial, which evidence was read to the

court-martial before which the rehearing was conducted. Defense counsel interposed no objection to the use of this former testimony, and entered into a stipulation as to its authenticity and the physical location of the witnesses —all of whom were situated more than one hundred miles from the place of trial. The accused once more was convicted, but a board of review (one member dissenting) again set aside the conviction—this time on the ground that the former testimony was inadmissible, and that the accused's failure to object thereto did not constitute a waiver of his right to compel its exclusion. The following two questions were certified:

"a. Was the Board of Review correct in determining in this case that the former testimony of witnesses at the original trial was not admissible into evidence at the rehearing?

"b. Was the Board of Review correct in determining that the conduct and tactics of the defense did not amount to waiver of any objection it might have had to the admissibility of such evidence at the rehearing?"

II

Appellate defense counsel rely upon two grounds in support of their position that the initial question must be answered in the affirmative. First, they assert that the original proceedings were void for want of jurisdiction, and thus that the former testimony was inadmissible at the second trial—this under the express terms of paragraph 145b, Manual for Courts-Martial, United States, 1951. In the alternative

564

they contend that the prejudicial error committed at the first trial is incurable —indeed was perpetuated by use at the rehearing of the testimony given at the earlier proceeding. In this latter connection they urge that defense counsel at the rehearing were inescapably bound by the conduct of the defense at the first trial—and, therefore, that anything less than an opportunity by properly selected counsel to conduct the entire defense anew, unhampered by the original record, was prejudicial to the accused.

The pertinent portions of paragraph 145b of the Manual, supra, provide:

"When at any trial by court-martial including a rehearing or new trial, it appears that a witness who has testified in either a civil or military court at a former trial of the accused in which the issues were substantially the same (*except a former trial shown by the objecting party to be void because of lack of jurisdiction*) is dead, insane, too ill or infirm to attend the trial, beyond the reach of process, more than one hundred miles from the place where the trial is held, or cannot be found, his testimony in the former trial, if properly proved, may be received by the court if otherwise admissible, *except that the prosecution may not introduce such former testimony of a witness unless the accused was confronted with the witness and afforded the right of cross-examination at the former trial.*" [Emphasis supplied.]

A detailed summary of the facts surrounding the accused's request for individual military counsel at the original hearing is contained in the first opinion of the board of review and thus the need for extended recital here is obviated. See United States v. Vanderpool, supra. Suffice it to observe that on that occasion the accused, having been informed by the convening authority that the military counsel he had requested was not reasonably available, was denied a continuance for the purpose of seeking review of this determination pursuant to the provisions of paragraph 48b of the Manual. No question is raised here concerning the jurisdiction of the court-martial over the person of the accused or the subject matter of the offense. Rather, it is the defense's contention that the failure of the law officer to grant the continuance for the purpose for which it was sought amounted to a deprivation of counsel—an error involving a statutory right of the accused, and one of such gravity as to void the jurisdiction of the court-martial.

We are sure that this jurisdictional position cannot be sustained. It is true that courts-martial are ■ special tribunals of limited jurisdiction, and strict compliance with the creative statute is required. United States v. Padilla, 1 USCMA 603, 5 CMR 31; McClaughry v. Deming, 186 US 49, 46 L ed 1049, 22 S Ct 786; Carter v. Woodring, 92 F2d 544 (CA DC Cir). However, we have repeatedly held that not every violation of a statutory provision with respect to court-martial proceedings constitutes a jurisdictional defect. United States v. Hutchison, 1 USCMA 291, 3 CMR 25; United States v. May, 1 USCMA 174, 2 CMR 80; cf. United States v. Pino [ACM 5274], 6 CMR 543. On the contrary we have said that proceedings are rendered void only by a failure to comply with those provisions which constitute "indispensable prerequisites" to the exercise of court-martial jurisdiction. United States v. Goodson, 1 US CMA 298, 3 CMR 32; cf. Humphrey v. Smith, 336 US 695, 93 L ed 986, 62 S Ct 830.

Article 38(b), Uniform Code of Military Justice, 50 USC § 613, prescribes that the accused "shall have the right to be represented in his defense before a general or special court-martial . . . by military counsel of his own selection *if reasonably available.*" (Emphasis supplied.) Paragraph 48b of the Manual provides that the initial determination of the availability of requested counsel shall be made by the convening authority—and further provides that this decision is "subject to revision by his next superior authority on appeal by or on behalf of the accused." It is thus apparent that the ■ right to military counsel of an accused's own selection is not an absolute right granted him,

but is subject to the exigencies and practicalities of whatever situation may obtain at the time. Of course, the right to choose counsel in the first instance may not be insisted on in such a manner as to obstruct either other important operations of the service concerned or the orderly administration of military justice. It is also clear that both the Code and the Manual distinctly comprehend the possibility that—if the requested counsel is not reasonably available—the accused will be required to stand his trial represented by counsel appointed by the convening authority, although such counsel may not be the first preference of the accused.

While these provisions secure important safeguards to an accused, we do not think it was intended that a failure to comply with them should vitiate the jurisdiction of a court-martial. In this connection the contention of the defense that the initial board of review should have ordered "another trial" rather than a "rehearing" is not well taken. In United States v. Sizemore, 2 USCMA 572, 10 CMR 70, we held that a failure to grant a recess, which resulted in the refusal of defense counsel to make a closing argument, was tantamount to a denial of accused's right to counsel at a crucial stage in the conduct of the trial. In that case, however, we cured the prejudicial error by ordering a rehearing. Also, in United States v. Goodson, supra, we held that the failure of the convening authority to appoint a commissioned officer as trial counsel did not cause the special court-martial there to lose jurisdiction. Commenting on the right of an accused person to individual military counsel, the Court observed during the course of the opinion:

". . . The Code provides no concept of justice which makes it essential to the rights of the accused that Government counsel possess certain qualifications. Even the appointment of a warrant officer to serve as defense counsel cannot irrevocably harm the accused. He is entitled to select counsel of his own choice, and may object to being defended by the person appointed if he desires to do

so. Reviewing authorities can always reverse convictions where failure to appoint an officer has substantially injured the accused."

It must be remembered that the reversal of the conviction in the case at bar by the board of review was based on the arbitrary action of the law officer in refusing the accused's request for a continuance. This refusal—while denying the accused a substantial right—constituted no more than a procedural step in the course of the trial, and did not affect the legal constitution of the court. A motion for a continuance is addressed to the sound discretion of the law officer—and only where there has been an abuse of discretion is his ruling subject to correction on appeal. United States v. Nichols, 2 USCMA 27, 6 CMR 27; United States v. Plummer, 1 USCMA 373, 3 CMR 107. It is manifest from past decisions of this Court that the correction contemplated entails only the disapproval of the findings and sentence and the direction of a rehearing in appropriate cases, and does not require that the entire proceeding be declared a nullity. See United States v. Sizemore, supra.

No different result is indicated in the cases relied on by the accused; on the contrary, they serve distinctly to clarify the distinction enunciated above. In United States v. Hockett [ACM S-4527], 7 CMR 768, and United States v. Butler [ACM 6164], 8 CMR 692, the decisions of the two boards of review that the courts-martial there under consideration were without jurisdiction to try the accused were based on the failure of the convening authority to appoint counsel qualified in accordance with the mandatory provisions of Article 27 of the Code, 50 USC § 591. In paragraph 61f of the Manual, supra, it is expressly provided that these requirements are jurisdictional, and stated specifically that a court is not legally constituted unless they are observed. This is not at all the case here—for we are now concerned only with the qualified right of an accused to individual military counsel of his choice given him by Article 38. With respect to this latter Article, much more nearly in point are those cases dealing with the

precise question before us, and decided under the substantially identical provisions of paragraph 45*a*, Manual for Courts-Martial, U. S. Army, 1949. See United States v. Dixon [ACM 1620], 1 CMR (AF) 594; United States v. Spaulding [ACM 111], 1 CMR (AF) 94. While in each of these cases it was held that the failure to grant a continuance, for the purpose of appealing from the convening authority's decision as to unavailability of requested counsel, was prejudicial to the substantial rights of the accused, in neither was the error regarded as jurisdictional. Cf. United States v. Fletcher [CM 354095], 6 CMR 163; Sanford v. Robbins, 115 F2d 435 (CA 5th Cir), cert den 312 US 697, 85 L ed 1132, 61 S Ct 737. For the foregoing reasons we are of the opinion that the denial of the accused's motion for a continuance in the case at bar did not operate to deprive the court-martial of jurisdiction nor to render the proceedings void within the meaning of paragraph 145*b* of the Manual.

### III

We turn now to the alternative contention that the error committed at the first trial so permeated the record as to render the former testimony inadmissible at the rehearing, although the original proceedings may not be deemed void. The initial board of review set aside the conviction which followed the first trial and ordered a rehearing. For the purposes of the present appeal, this previous decision must be taken to have stated the law of the case—and to dispose of the alternative contention of the accused it is necessary that we determine the effect of the board's opinion.

It is undeniably true that, if the accused had been wholly deprived of counsel at the first trial, the testimony of witnesses who appeared at that time would be inadmissible in subsequent proceedings. Here, of course, the accused was ably represented by counsel —by three lawyers, in fact, two of whom were certified in conformity with the requirements of Article 27. Yet there was not numbered among them the individual specifically requested by Vanderpool. It is perfectly clear to us that the board did find in the deprivation rule an analogy for use in the present case and did rely on it. We are confirmed in this belief by suggestions in the terminal paragraph of its opinion to the effect that it must be deemed immaterial whether the appeal from the convening authority's ruling on availability would have been successful, or whether it appeared that the requested counsel could possibly have brought about a result more favorable to the accused. Cf. United States v. Fletcher, supra. The board certainly held that the accused was materially prejudiced through his deprivation of a substantial right by the arbitrary action of the law officer—and we have no disposition to challenge this conclusion. Within the obvious thrust of that opinion too, we are sure, is the conclusion that no legal conviction may be predicated on the testimony contained in the record of the first trial, which was conducted by counsel objected to by the accused. It follows that under the board's decision—which, as we have seen, must furnish us with the law of the present case —it would be inconsistent for us to agree that the accused was somehow denied adequate legal representation at the first trial and yet to hold the testimony given at that proceeding to be admissible to ground a conviction at the second over the objection of the accused. On the contrary, we think that there is no logical escape from the conclusion that the former testimony here was inadmissible, and that an objection by the defense to its introduction would have been well taken. For these reasons the first certified question must be answered in the affirmative.

### IV

This brings us to a consideration of whether the conduct and tactics of the defense at the rehearing constituted a waiver of objection to the admissibility of the former testimony. A summary of the significant features of this conduct is set out hereafter. Shortly after the initial board of review had ordered a rehearing in the case, civilian counsel for the accused—who had previous-

ly entered an appearance on his behalf and filed assignments of error and a brief before the board of review—filed with the Secretary of the Air Force a petition requesting that the rehearing be conducted within the continental limits of the United States. This document was referred to the Commanding General, Fourth Air Force, Hamilton Air Force Base, California, the officer exercising general court-martial jurisdiction over the place of confinement of the accused. The request was subsequently granted, and on July 16, 1953, the Staff Judge Advocate of the Fourth Air Force informed civilian counsel that the rehearing would be held at Hamilton. In his letter the Staff Judge Advocate noted that the accused—fully understanding his right to obtain the services of a civilian lawyer or once more to request individual military counsel—had stated that he wished to be represented by regularly appointed defense counsel. The accused was in fact so represented at the rehearing, and both defense and assistant defense counsel were certified at the time of trial in accordance with Article 27 of the Code.

At the rehearing, accused entered into stipulations as to the authenticity of the former record and the whereabouts of witnesses. No objection was interposed to the introduction of the reported testimony of the witnesses offered at the first trial—although isolated objections were made throughout the course of the rehearing to specific questions and to the answers of certain witnesses. In addition, the defense utilized in its own behalf the reported testimony of three witnesses who had testified at the original trial. A majority of the second board of review was of the opinion that this conduct on the part of the defense did not amount to a waiver of objection to the introduction of the former testimony.

We incline to take another view of the problem. In this connection we must emphasize the fact that the present appeal is taken from a judgment entered on *rehearing*. This rehearing was deemed necessary by the initial board of review for the purpose of correcting the error of the law officer at the first trial, which resulted in some sense in the denial of proper counsel to the accused. At this later proceeding, the accused—in accordance with his express wish—was represented by regularly appointed defense counsel. Consequently, no question may be raised on this appeal concerning their adequacy. It follows that we are not here confronted with any issue involving a fundamental right—a structural member of the judicial edifice. Cf. Johnson v. Zerbst, 304 US 458, 464, 82 L ed 1461, 1466, 58 S Ct 1019, 146 ALR 357; United States v. Evans, 1 USCMA 541, 4 CMR 133; Adams v. United States, 317 US 269, 87 L ed 268, 63 S Ct 236, 143 ALR 435. In the present setting, the failure of the defense to object to the introduction of the former testimony can constitute only a waiver of the right to exclude inadmissible evidence, and may in no sense be considered as a waiver of the right to counsel.

Paragraph 154*d* of the Manual, in its treatment of waiver of objections to evidence, uses the following language on page 297:

". . . There is no prescribed form for making a waiver. Thus, if it clearly appears that the defense or prosecution understood its right to object, any clear indication on its part that it did not desire to assert that right may be regarded as a waiver of the objection. However, a waiver of an objection does not operate as a consent if consent is required, and a mere failure to object does not amount to a waiver except as otherwise stated or indicated in this manual."

It thus appears as a general proposition that to effect a waiver as to evidence, the opponent must (a) understand the right to object and (b) indicate in some appropriate manner a desire to refrain from asserting that right. Let us consider the conduct of the defense at the second trial from the standpoint of these considerations. Although the accused was not accorded counsel of his choice at the original trial, he was

there represented by three appointed counsel—two of whom were certified as competent to perform such duties at trials by general court-martial. That they were zealous in protecting his interests cannot be doubted. Indications of their competence are found in the manner in which they asserted the right of the accused to counsel of his choice when he was initially brought to common trial with another airman on the same charges—and in the insistence with which they reasserted that right thereafter, and preserved their objection to the denial of a continuance after a severance had been ordered. At this first trial, the witnesses for the prosecution were subjected to thorough and searching cross-examination, carefully designed to impeach the credibility of those who were alleged to be coconspirators, and to limit the effect of testimony otherwise tending to inculpate the accused.

When the accused's request for a stateside rehearing was granted, the Government was faced with a choice between (1) transporting the witnesses who had appeared at the first trial to the site of the rehearing; (2) securing depositions from those same witnesses; or (3) relying on their former testimony as cross-examined by the original defense counsel. The stipulation entered into by the accused established that all save one resided in the Far East, and that one—a convicted coconspirator—was incarcerated some 300 miles from the place of trial. In this situation, it could not reasonably be supposed that the Government would adopt the first alternative. Similarly, the use of depositions—with its incident expense in time and money—would scarcely recommend itself, unless the course were made necessary by a defense reluctance to try the case on the record of the earlier trial.

The record discloses that a transcript of the testimony at the initial trial was delivered to and accepted by the accused on December 30, 1952, and was thus available to counsel prior to the rehearing. It is quite possible, as the dissenting member of the second board of review concluded, that—in light of their familiarity with the former testi-mony and its cross-examination—defense counsel genuinely preferred its acceptance in evidence over the risk of confrontation by witnesses at a rehearing conducted at Okinawa, and the possible delay incident to such a rehearing. Moreover, it is hard to conclude that the defense believed it might adduce any item of new and favorable information from these witnesses—since it made no attempt to obtain further testimony from them by deposition.

If defense counsel had sought to cause the Government to make use of the second alternative—the taking of depositions from the absent witnesses—it is also difficult to conceive of any advantage which would have been obtained thereby. Doubtless the accused would not have been present at the taking of such depositions—whether on oral or written interrogatories—and thus would have lacked an opportunity for the confrontation he possessed at the first trial. There is certainly no indication in the record of that trial why the defense might later have thought that additional examination would prove more beneficial than that conducted at the original trial by the qualified lawyers who then represented the accused.

The conduct of the defense in requesting a rehearing within the United States and—after ample opportunity for study of the former testimony—interposing no objection to its introduction in evidence, evinced a complete willingness that the rehearing proceed on the basis of former testimony. Indeed, parts of that testimony were used by the accused in support of his own case. Thus it is distinctly arguable that defense counsel did understand the accused's rights and indicated that they did not wish to exercise them.

V

It is unnecessary, however, that we rely on this approach to the problem. It will be recalled that the Manual's paragraph 154*d*, supra, provides that "a mere failure to object does not amount to a waiver *except as otherwise stated*

*or indicated in this manual."* (Emphasis supplied.) Is there a Manual statement or indication "otherwise" with respect to the problem before us here? We believe that there is. In this same source's paragraph 145b, the following is said at page 271:

". . . A failure to object to the introduction of testimony given at a former trial of the accused on the ground that the issues in the former trial were not substantially the same, or on the ground that the accused was not confronted with the witness and afforded the right of cross-examination at the former trial, or on the ground that it does not appear that the witness is now unavailable, may be considered a waiver of that objection."

It thus appears that a failure to object to the admission of former testimony constitutes a waiver where even so fundamental a consideration is involved as similarity of issues—the very core of this apparent exception to the hearsay rule. And the same is true as to the bedrock rights of confrontation and cross-examination—and the critical element of unavailability. Here the issues are identical; unavailability was a subject of stipulation; confrontation was undeniably present; and the witnesses were thoroughly cross-examined by defense counsel whose professional competence was demonstrated at the first trial. It must follow that under the facts of the present case the failure of defense counsel at the second trial to object to the introduction of the former testimony must be deemed a waiver.

It must be apparent that we do not find in the instant case any of those extraordinary circumstances which preclude application of the waiver principle —on the ground that its acceptance would result in a manifest miscarriage of justice. See United States v. Bodenheimer, 2 USCMA 130, 7 CMR 6; United States v. Dupree, supra. In United States v. Hunter, 2 USCMA 37, 6 CMR 37, Judge Latimer, speaking for the Court, used the following language which bears some relevance to the case at bar:

"After appointment of counsel, as required by the Code, an accused, if he contends his rights have not been fully protected, must reasonably show that the proceedings by which he was convicted were so erroneous as to constitute a ridiculous and empty gesture, or were so tainted with negligence or wrongful motives on the part of his counsel as to manifest a complete absence of judicial character. . . . This principle must be strictly adhered to, else every unsuccessful representation would be urged as a basis for reversal."

We are confident that the present accused cannot bring himself within the scope of this principle. Irregularities with respect to counsel having developed at his first trial, he was granted a rehearing. At his own request, the rehearing was conducted some thousands of miles from the site of the initial trial and the location of the witnesses against him. Faced with the prospect of use of their former testimony, he made no objection thereto, utilized portions of the prior record himself, and made no attempt to amplify the record in any manner. Only after a conviction for the second time did he raise the question of admissibility, although represented throughout the later proceedings by legally qualified and competent counsel. The circumstance that the course of action adopted by the accused resulted in his conviction furnishes no ground for setting it aside. See Adams v. United States, supra.

VI

It follows from what we have said that the second certified question must be answered in the negative. The decision of the board of review is reversed, and the record is returned to The Judge Advocate General, United States Air Force, for action in accordance with this opinion.

Chief Judge QUINN and Judge LATIMER concur.