UNITED STATES, Appellee

v

MICHAEL JOHNSON, Private First Class, U. S. Army, Appellant

No. 27,319

June 14, 1974

*Captain Robert D. Jones* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick, Captain Denis E. Hynes,* and *Captain J. Houston Gordon.*

*Captain David A. Schlueter* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Lieutenant Colonel Donald W. Hansen, Captain M. Douglas Deitchler, Captain John P. Pinkerton,* and *Captain Robert C. Roth, Jr.*

## OPINION OF THE COURT

DUNCAN, Chief Judge:

A belated rescission of convening orders leads to a jurisdictional problem in this case. The issue is whether the military judge who served at the trial was properly empowered to act as such in light of a change in orders.

The charges against the accused were originally referred to trial before a court-martial appointed by Court-Martial Convening Order Number 123. This order named Captain Barry P. Steinberg as military judge. It was subsequently amended by Court-Martial Appointing Order Number 129 to remove Captain Steinberg as military judge and to replace him with Captain M. Scott Magers. The accused then requested trial before a court-martial, the membership of which included enlisted personnel. His case was, therefore, withdrawn from the court previously appointed by Court-Martial Appointing Order Number 123, as amended by Court-Martial Appointing Order Number 129, and referred to a court-martial appointed by Court-Martial Appointing Order Number 133. This order reappointed Captain Steinberg as military judge and added the necessary enlisted men to the court.

At the commencement of the trial, the accused elected to withdraw his request

for enlisted members. Captain Steinberg, uncertain of his authority to excuse the enlisted members, recessed the proceedings and directed the trial counsel to contact the convening authority regarding their release. He stated that he assumed the convening authority would excuse the enlisted members and continue with the appointed officers or perhaps add others to the panel.

After consulting with the convening authority during a recess, the trial counsel returned and informed the judge:

> Your Honor, the convening authority has rescinded convening order— court-martial convening order number 133 and leaves the case referred to court-martial convening order number 123.

Thereafter, the accused was arraigned on the charges and pleaded not guilty, and the case proceeded to trial on the merits.

At the Court of Military Review level, the Government conceded that the court had not been properly constituted, due to the removal of Captain Steinberg by the amendment to order 123, and requested the findings and sentence be set aside. The Court of Military Review nevertheless examined the record, determined that it was the intent of the convening authority to remove only the enlisted members from the court and to have Captain Steinberg preside. In light of the clear and unambiguous language of the convening orders and the equally clear communication by the trial counsel that order 133 had been rescinded and the case re-referred to the court appointed by order 123, we disagree with the rationale of the Court of Military Review.

In this case, the sole evidence of the convening authority's intent is in the express announcement by the trial counsel of the former's order rescinding order 133 and directing that the case be tried by the court appointed by order 123. Unfortunately, Captain Steinberg had been removed as military judge of that court by order 129 and replaced by Captain Magers. If we are to presume that the convening authority knew anything, we would have to incline to the view that he was aware that he had so re-

moved Captain Steinberg. But this is not necessary. The convening orders and the trial counsel's announcement are clear and unambiguous. To attempt from this record to construct an intent on the part of the convening authority that Captain Steinberg be reappointed to the court and serve as a military judge is to engage in nothing short of speculation.

This we may not do. Unlike civil courts, courts-martial are creatures of statute and, to retain their jurisdiction, they must be constituted strictly in accordance with the procedures those statutes lay down. McClaughry v Deming, 186 U. S. 49, 55 (1902). Thus, the Supreme Court stated in Runkle v United States, 122 U. S. 543 at 555–6 (1887):

> A court-martial organized under the laws of the United States is a court of special and limited jurisdiction. It is called into existence for a special purpose, and to perform a particular duty. When the object of its creation has been accomplished it is dissolved. . . . To give effect to its sentences, it must appear affirmatively and unequivocally that the court was legally constituted; that it had jurisdiction; that all the statutory regulations governing its proceedings had been complied with; and that its sentence was conformable to law.

For almost 100 years, these precedents have stood unquestioned. As recently as our holding in United States v Singleton, 21 USCMA 432, 45 CMR 206 (1972), we relied on them to strike down a conviction by a court-martial to which counsel and the military judge had allegedly been orally appointed but in which subsequent orders did not establish their timely placement on the court. Significantly we held in that case that no special or general court-martial is jurisdictionally empowered to sit in judgment unless the requisite number of members, a military judge, and counsel have been properly detailed. United States v Singleton, supra at 434, 45 CMR at 208. *Cf.* United States v Dean, 20 USCMA 212, 43 CMR 52 (1970); United States v Robinson, 13 USCMA 674, 33 CMR 206 (1963).

As he had been removed from the court-martial which heard the case by

order 129, Captain Steinberg had no authority to preside over the trial, and the court was without a military judge. As the Government conceded before the Court of Military Review, this was jurisdictional error invalidating the proceedings. United States v Singleton, supra.

The decision of the U. S. Army Court of Military Review is reversed, and the findings of guilty and sentence are set aside. The record of trial is remanded to the Judge Advocate General of the Army. A new trial may be ordered before a properly constituted court-martial.

Senior Judge FERGUSON concurs.

QUINN, Judge (dissenting):

The first step in the proceedings important to the jurisdictional issue before us is the reference of the charges to a special court-martial constituted by Major General Walker, Commander of the 3d Infantry Division. The court-martial convening order, number 123, detailed Captain Steinberg as judge and appointed eight officers as court members. Captain Eastburn was detailed trial counsel and Captain Cowart III was appointed defense counsel. Thereafter, trial counsel conferred with Judge Steinberg to set the case for trial on October 26, 1972. As defense counsel indicated in the record, he was then attempting to negotiate "some type of pretrial agreement," and apparently he acceded to the October 26 date "in anticipation" of success in his endeavor. Judge Steinberg was not available, but he obtained Judge Magers' consent to serve. Judge Magers was on duty in Nurenberg. On October 24, by order 129, Judge Magers was detailed to the order 123 court-martial, "vice" Judge Steinberg who was "relieved." In a separate paragraph, order 129 also relieved Captain Eastburn as trial counsel and appointed Captain Shelton in his place. Parenthetically, it should be noted that on September 6 the accused had requested Captain Eastburn as individual defense counsel. In his request, the accused represented that Captain Eastburn had been his lawyer in previous disciplinary and court-martial proceedings, and he maintained that if the captain was "allowed to prosecute" him, he would be seriously prejudiced. Captain Eastburn was unavailable to act as defense counsel.

Trial of the accused's case was set for October 26 at Aschaffenburg, before the order 123 court. However, the negotiations for a pretrial agreement aborted, and defense counsel informed trial counsel that he would not, or could not, go to trial as scheduled. On October 25, the defense submitted a formal request that the membership of the court-martial include enlisted persons. See Article 25(c), Uniform Code of Military Justice, 10 USC § 825(c); Manual for Courts-Martial, United States, 1969 (Rev.), paragraph 36d(2). Trial counsel agreed to enable defense counsel "to prepare for a contested case."

On October 31, General Walker promulgated order 133. This order detailed Judge Steinberg as military judge and appointed four of the eight officers who constituted the membership of the 123 court and three enlisted persons. Captain Shelton and Captain Cowart were detailed as trial and defense counsel, respectively. The order further provided that the "unarraigned case" of the accused in the hands of trial counsel of the 123 court "as amended," be brought "to trial before the court hereby appointed." Trial was set for November 3. That morning an Article 39(a) session was held by Judge Steinberg, as the trial judge of the 133 court. At this hearing Captain Cowart and Carl T. Hultman, Esquire, a civilian attorney admitted to the bar of the State of Washington, appeared as counsel for the accused. Mr. Hultman had been retained two days earlier. The hearing dealt with two closely connected matters. First, Mr. Hultman had advised the accused to withdraw his request for enlisted court members, and the accused formally requested such withdrawal. Secondly, both Mr. Hultman and Captain Cowart contended that they were not prepared to try the case that day. Trial counsel opposed a continuance. On the question of the composition of the court membership, he suggested that the "proper procedure" was to recess the hearing to enable him "to convey" the information as to withdrawal of the request for enlisted members to the convening authority for such "adjustments to the court-martial convening order" that he deemed appropriate. After a recess, the

continuance question was resolved on the basis that the trial would proceed that day for certain purposes, including the taking of the testimony of an important Government witness who was to depart Germany that evening, and on completion thereof would be continued to November 10. Responding to Judge Steinberg's inquiry about the court membership matter, trial counsel reported as follows:

TC: Your Honor, the convening authority has rescinded convening order —court-martial convening order number 133 and leaves the case referred to court-martial convening order number 123.

The Article 39(a) hearing continued with consideration of a defense request for certain witnesses; determination of a defense motion to dismiss two of the charges; and a discussion of other procedural matters. In course of the latter, civilian counsel indicated that he had learned that the Government's principal witness, whose testimony was to be heard that day, had previously been represented by an associate in his firm, and he did not "want to be in the position of cross-examining a client." With the accused's consent, counsel was allowed to withdraw. In a colloquy with Judge Steinberg, the accused stated that he did not desire to retain other counsel and was satisfied to continue with Captain Cowart.

At the close of the hearing, the "full court" was convened. The members of the court, present and absent, were the officers designated on order 123. Thereafter, trial proceeded in regular order, with no objection by the defense, on any ground, to the eligibility of Judge Steinberg to preside, to the court membership, or to the right of Captain Shelton to serve as trial counsel. With some exceptions, the accused was found guilty of all the offenses charged and was sentenced to a bad-conduct discharge, confinement at hard labor for 3 months, and partial forfeiture of pay for the same period. The convening authority affirmed.

On review before the Court of Military Review, appellate defense counsel contended that, as finally constituted, the court-martial had no jurisdiction to try the accused. Counsel argued that General Walker's rescission of order 133 and reference of the case to the order 123 court meant that the 123 court was as amended by order 129, which relieved Judge Steinberg as trial judge and substituted Judge Magers. As a result, the argument continued, Judge Steinberg was ineligible to act as trial judge, and without the presence of a properly detailed judge, the court-martial had no power to proceed to verdict and sentence. Citing United States v Coleman, 19 USCMA 524, 42 CMR 126 (1970), the Government conceded that the court-martial "did not have jurisdiction." However, the Court of Military Review rejected the defense argument and the Government's concession.

First, the court reasoned that the "totality of the record" demonstrated that trial counsel's report of General Walker's action was an "inartful description" of what the general had "intended to accomplish" and had actually directed. It noted that the problem was the membership of the court before which a case was already at trial. The trial was still in the preliminary stage before Judge Steinberg and the accused was represented by military counsel who was the same counsel previously detailed to the 123 court. Judge Steinberg had ruled on important interlocutory matters, and others were under consideration. The time for effectuating the necessary change was "of the essence" because an important Government witness was to leave Germany that evening. Finally, Judge Steinberg was manifestly available, but Judge Magers, who had been substituted for him by order 129, was assigned to Nurenberg, approximately 60 miles away. These circumstances convinced the Court of Military Review that General Walker "intended only to change the court members" from those designated in order 133, which included enlisted persons that the accused no longer wanted on the court, to the officer members designated in order 123, and that was all he directed. From the absence of any defense comment or objection, the court was also convinced that "this is what the parties assumed was being done" by virtue of General Walker's order.

Alternatively, the Court of Military Review assumed trial counsel's "inartful language" accurately reported General Walker's action. Considering the purpose to be achieved and the existing situation, it concluded that the action "encompassed . . . verbal reappointment of Captain Steinberg to the court [123] as military judge." The Court of Military Review deemed it unnecessary to decide whether this reappointment effected removal of Judge Magers; it reasoned that if Judge Magers was not relieved, the result was that two judges were detailed to the court-martial. Multiple detail of that kind is irregular, but as it was not prejudicial to the accused, the court did not regard the error as ground for reversal of the accused's conviction. See United States v Sayers, 20 USCMA 462, 43 CMR 302 (1971).

A person learned in a discipline is expected to use words of art common to that discipline in their usual technical sense. Lapses, however, occur. Consequently, the context in which a word of art is used may impel the conclusion that the word was intended by the user, and was understood by his listeners, to mean something different. See United States v Platt, 21 USCMA 16, 20, 44 CMR 70, 74 (1971)(concurring opinion). The situation created by the accused's withdrawal of his request for enlisted members logically supports the kind of solution posited by the Court of Military Review, but I cannot find in the words used by trial counsel any reasonable indication that was what the convening authority ordered.[1] Trial counsel did not merely say that General Walker had "rescinded" order 133. By itself, a direction of that kind could, in the context of the situation that required it, be con-

strued to mean that the rescission was only of that part of order 133 that was important to the trial then in progress, specifically the court membership. The additive statement, "and leaves the case referred to court-martial convening order number 123," leads inexorably to the conclusion that the whole order 133 court was terminated and the case in progress was taken from it. I am constrained, therefore, to conclude that the convening authority decreed cessation of proceedings by the 133 court and transfer of the accused's case to the 123 court.[2]

Re-referral of the case to the 123 court does not mean, as defense counsel contend, that Judge Steinberg was an interloper. See United States v Harnish, 12 USCMA 443, 31 CMR 29 (1961). The original order 123 detailed him as trial judge of the court. True, when other commitments made him unavailable for trial on the day originally desired by counsel, he was formally relieved by Judge Magers. But, the trial date was changed and Judge Steinberg was present and presiding at trial of the case, albeit under order 133. Confronted with this situation, the convening authority had to know that Judge Magers was wholly removed from the case. Consequently, in directing that the case be referred to the 123 court, it can fairly be inferred that he meant the 123 court as originally convened. So construed, General Walker's order excludes the amendment by order 129 which substituted Judge Magers for Judge Steinberg and left Judge Steinberg as the properly detailed military judge.

Two matters remain for consideration. The first is the difference in trial counsel

---

[1] As there were sufficient officers members to constitute a special court-martial, it would appear that the simplest solution to the problem would have been to excuse the enlisted members of the court convened by order 133 and continue the trial with remaining officer members. See United States v Beer, 6 USCMA 180, 19 CMR 306 (1955), citing Patton v United States, 281 U. S. 276 (1930).

[2] No written order appears in the record. Trial counsel's report and the absence of a writing imply that the order

was oral. The Manual for Courts-Martial, United States, 1969 (Rev.), paragraph 37c, requires that an oral order effecting a permanent change in a court-martial be memorialized by a writing. I join the Court of Military Review in reminding trial judges "to obtain all convening orders and amendments . . . and read them to determine inconsistencies and deficiencies so that corrective action, where required, can be taken." United States v Johnson, 47 CMR 453, 456 (ACMR 1973).

between order 133 and order 123; the second, is the joinder of the transcript of the Article 39(a) hearing held under order 133 with the transcript of the trial proceedings before the order 123 court. As to the counsel issue, the appearance of Captain Shelton instead of Captain Eastburn was not objected to by the accused, and it was certainly not prejudicial to him. The accused had expressly objected to Captain Eastburn's continuance as trial counsel on the ground that he had previously represented the accused in other matters. Apart from the effect of these circumstances as waiver of any right to object, the absence of counsel for the Government does not deprive the court of jurisdiction or deny any right of the accused. As Mr. Justice Powell recently noted, "[G]overnment often does not hire lawyers to prosecute petty offenses." Argersinger v Hamlin, 407 U. S. 25, 49 (1972). The absence of a Government lawyer may affect the orderliness of the trial, but if the Government elected to number its witnesses and directed them to testify in the order assigned, no right of the accused is violated or impaired. On the contrary, among other things, such procedure might result in loss by the Government of its right to rebut unfavorable cross-examination testimony by its witnesses, the right to cross-examine defense witnesses, and right to closing argument, all of which might be of material advantage to the accused.

The Constitution grants an accused the right to counsel for himself, but he has no right to insist upon appointment of counsel for the Government. The Uniform Code requires that counsel be appointed for the Government for special and general courts-martial and prescribes certain qualifications for, and restrictions on, the persons who may be appointed. Article 27, UCMJ, 10 USC § 827. Some language in the Manual for Courts-Martial seems to imply that at least a general court-martial lacking a properly detailed trial counsel lacks jurisdiction to proceed with the trial of a case referred to it. Thus, paragraph 61 which deals with the preliminary organization of a court-martial provides that a "general court-martial is not legally constituted unless the detailed trial counsel has been certified as competent to perform such duties by the Judge Advocate General of the armed force of which he is a member." MCM, paragraph 61e(1). However, the Manual's discussion of the specific subject of a court's power to try and determine a case makes clear that the "requisites" of jurisdiction do not include detail of counsel for the Government. Paragraph 8, MCM.

In one of the first cases in which this Court dealt with articles of the Uniform Code relating to the convening and functioning of courts-martial, we held that not all such articles affect jurisdiction. United States v Gordon, 1 USCMA 255, 2 CMR 161 (1952); see also United States v Goodson, 1 USCMA 298, 3 CMR 32 (1952). Thereafter, in United States v Vanderpool, 4 USCMA 561, 16 CMR 135 (1954), and again in United States v Best, 6 USCMA 39, 19 CMR 165 (1955), we rejected a defense contention that denial of effective assistance of counsel divests the court of power to hear and determine a case properly referred to it. In *Vanderpool,* supra at 565–66, 16 CMR at 139–40, the Court noted that, as special and limited tribunals, courts-martial must proceed in "strict compliance" with the creative statutes, but it determined that ineffective representation by defense counsel, which amounts to deprivation of counsel, does not "vitiate the jurisdiction of a court-martial." It necessarily follows that irregularity in the detail of Government counsel does not deprive the court-martial of jurisdiction. *Cf.* United States v Durham, 15 USCMA 479, 35 CMR 451 (1965). Nor is the substitution intolerable within the meaning of United States v Coleman, 19 USCMA 524, 42 CMR 126 (1970), upon which the Government based its concession of error in the Court of Military Review. In *Coleman, defense counsel* was listed in the appointing order as *trial counsel.* We concluded that the "continued listing of the defense counsel as a trial counsel . . . at the time of the trial is an unacceptable deviation from regularity." *Id.* at 526, 42 CMR at 128. In this case, the record discloses no dual role by defense counsel; all it indicates is the formal listing of Captain Eastburn as trial counsel but the actual appearance of Captain

Shelton in that capacity. If the accused had a right to object to Captain Shelton serving as trial counsel, he waived the objection by failing to assert it at trial. See United States v Moschella, 20 USCMA 543, 43 CMR 383 (1971); United States v Beer, supra.

Turning to the continuity of the proceedings, the Article 39(a) hearing by Judge Steinberg was patently proper when it was held. The order 133 court was still in existence; Captain Steinberg was properly detailed to it; and the accused's case was properly before it. Termination of further proceedings before this court came before any evidence on the merits was introduced; as a result, the case could be sent to the 123 court for trial of the merits. Article 44(c), UCMJ; MCM, paragraph 56; United States v Richardson, 21 USCMA 54, 44 CMR 108 (1971). Withdrawal of the case from the 133 court did not nullify what it had done. Had Judge Steinberg granted the defense motion to dismiss two of the charges, his ruling would stand as part of the proceedings in the accused's case, unless it was thereafter properly overturned. Cf. United States v Hart, 19 USCMA 438, 42 CMR 40 (1970);

United States v Smith, 4 USCMA 369, 15 CMR 369 (1954); see also Priest v Koch, 19 USCMA 293, 41 CMR 293 (1970). An authenticated transcript should have been made for the Article 39(a) hearing as part of the proceedings of the 133 court and a separate transcript should have been prepared for the 123 court, with perhaps reference to the Article 39(a) hearing to insure that the two would not be separated on review. Article 54, UCMJ, 10 USC § 854; see United States v Mullican, 7 USCMA 208, 21 CMR 334 (1956). However, the accused did not object to the inclusion of both proceedings in a single authenticated record, and he does not now contend that this single record is deficient in any significant respect to assure the kind of review to. which he is entitled. The deficiency in the formal record does not affect the validity of Judge Steinberg's conduct of the Article 39(a) hearing for the 133 court and the jurisdiction of the 123 court that convicted the accused.

Perceiving no jurisdictional or prejudicial error· in the record of trial, I would affirm the decision of the Court of Military Review.