UNITED STATES, Appellant and Cross-Appellee

v.

JAMES H. SIZEMORE and JOHN H. STEIN, Privates, U. S. Army, Appellees and Cross-Appellants

2 USCMA 572, 10 CMR 70

No. 784

Decided May 29, 1953

Lt Col Thayer Chapman, U. S. Army, Capt Irvin M. Kent, U. S. Army, and 1st Lt Robert A. Forman, U. S. Army, for Appellant and Cross-Appellee.

Thomas H. King, Esq., and Lt Col George E. Mickel, U. S. Army, for Appellees and Cross-Appellants.

## Opinion of the Court

Robert E. Quinn, Chief Judge.

Each of the two accused in this case was found guilty by general court-martial of the murder of a German civilian while perpetrating armed robbery, and was sentenced to dishonorable discharge, total forfeiture of pay and confinement for life. The convening authority approved only so much of the findings of guilty as found the accused guilty of murder, and approved the sentences. An Army board of review set aside the findings and sentence and ordered a rehearing. The case is before us on certificate from The Judge Advocate General, in accordance with Article 67(b) (2) of the Uniform Code of Military Justice, 50 USC § 654.

Since we concur with the board of review's action in this case, it becomes unnecessary to consider the lengthy assignments of error set forth by defense counsel. Also, since there is no contention that there is insufficient evidence to support the findings of guilt, there is no necessity for setting forth the facts in detail. The two accused took a taxicab from a restaurant in Germany. The proprietor of the restaurant observed them get into the taxicab, and noted that one of the accused was armed with a pistol. The taxicab driver's body, shot through the head, was found later in the evening, by two German civilians. A pistol was later found in the accused Stein's locker, and ballistics experts testified that bullets found near the driver's body came from that pistol. Full confessions by the accused were received in evidence.

The trial in this case lasted for three days. Twenty-four witnesses testified, and twenty-three exhibits were received in evidence. On the last day of the trial, a long lunch hour recess was taken. After the court reassembled, two court witnesses were called and five exhibits were received in evidence. The witnesses connected the lethal bullet with Stein's pistol for the first time, and the exhibits were those that formed the basis for the ballistics conclusion. Thereafter, the law officer announced that because of the complex-

**573**

ity of the case, he would set no time limits upon final arguments. The trial counsel presented a brief summation, and the following colloquy between the law officer and defense counsel then occurred:

"LAW OFFICER: What sayeth the defense?

"DEFENSE: May the defense, on the defense counsel's request and not because the two accused, request a ten minute recess?

"LAW OFFICER: May I ask the purpose of that recess?·

"DEFENSE: Yes, sir, to get my thoughts together.

"LAW OFFICER: The recess is denied. Proceed with the case. You have just come in from lunch. You have been here less than thirty minutes.

"DEFENSE: That is correct, sir, but the defense was forced to put on their case before a witness was put before this court who we did not know what he was to talk about.

"LAW OFFICER: Do you wish to make an argument? If so, now is the time to do it. I have denied the recess.

"DEFENSE: No, sir, I do not.

"LAW OFFICER: At this time, and before I go into this, I will give you one further opportunity. If you wish to make an argument on behalf of your clients, I repeat, now is the time to do so.

"DEFENSE: I do, sir, but I would like a ten minute recess.

"LAW OFFICER: I have denied the request for a recess.

"DEFENSE: The defense is not ready at this particular moment to make any argument."

We concur with the Army board of review's well-reasoned opinion that the denial of the defense request for recess and the failure of defense counsel to present argument constitute prejudicial error. There is little that we can add to the board's excellent discussion on this issue. While it is true that the granting or denial of a recess lies within the sound discretion of the law officer, it is difficult to conceive of a more arbitrary abuse of discretion than took

place here. The trial had lasted for three days, important prosecution evidence had been received at the request of the court immediately prior to the time for argument, and defense requested only ten minutes. If counsel had proceeded with oral argument despite the denial of the recess, it might well be difficult to say that the accused were prejudiced thereby. However, defense counsel refused to make any argument. The accused were not advised either of their right to personally present argument on their own behalf or of their right to secure the assistance of counsel that would make proper argument for them. This procedure, in effect, left the accused without counsel at a crucial point in the trial.

The right—and duty—of defense counsel to present a closing argument is not to be lightly brushed aside. Where the case is long and hotly contested and a planned strategy has been pursued by defense, the closing argument may be crucial. Out of the wealth of testimony adduced, defense must bring together the portions that are favorable to the accused and present them in a light that will appear most convincing to the triers of fact. If this is not done by defense counsel, there is a danger that the court may not understand or appreciate the defense theory. It is no exaggeration to say that many criminal cases are won for the accused in the course of closing argument. This is an important part of the protection guaranteed by the requirement that an accused in a criminal case be represented by counsel. Speaking in a somewhat similar situation, a Federal Court of Appeals has observed as follows:

". . . . The right to·counsel is at least partially destroyed, if sufficient time is not allowed to fully and fairly present the facts. While it is a just criticism of criminal practice that too much time is consumed in the trial of cases, nevertheless it is of greater importance that those accused of crime have the right, within reasonable bounds and according to the rules of the court, conducive to orderly procedure of business, to present their defense, than that time

be saved." [Rossi v. United States, 9 F2d 362, 368 (CA8th Cir)].

It is our conclusion that the arbitrary refusal of a short recess by the law officer constituted an abuse of discretion and was, therefore, error. This error was compounded and resulted in substantial prejudice to the accused when defense failed to provide the full measure of representation by not presenting final argument. The result is prejudicial error requiring a rehearing. In view of this disposition, it becomes unnecessary to consider the other assignments of error. We may note, however, that United States v. Joe L. Davis (No. 646), 10 CMR 3, decided May 14, 1953, is dispositive of several major issues raised.

The decision of the board of review is affirmed.

Judge BROSMAN concurs.

LATIMER, Judge (dissenting):

I dissent.

In view of the sketchy statement of facts given in the Court's opinion, I believe it advisable to relate more fully the testimony found in this record. In doing this I shall refer to the parties as the Government and appellants. Before delving into the facts I must, in fairness to counsel who represent the accused on appeal, mention that they did not participate in the trial forum and so my comments concerning trial tactics do not apply to them.

On the night of July 20, 1951, the appellants were in a restaurant in the town of Kathus, Germany. At about 11:30 that night, one of the two requested the restaurant proprietor to order a taxi. He complied with the request and when the taxi arrived, the appellants took their places in the car with Stein sitting on the rear seat and Sizemore on the front seat next to the driver. As the appellants were leaving the restaurant, the proprietor noticed a gun protruding from under Stein's jacket. Shortly after 11:30, two German pedestrians, while walking in the vicinity of Kathus, noticed a car approaching them. They watched the car reduce its speed and before it entirely stopped they heard three shots, one of which sounded as if it were muffled. After a short stop the car moved on. The pedestrians proceeded to the area from whence they heard the shot and they noticed a man lying on the ground, seriously wounded but still alive. One of the pedestrians requested a passer-by to call a doctor and notify the German police. While awaiting their arrival he noticed two empty cartridge cases near the body but did not molest them. When the doctor arrived, the victim was examined and the doctor concluded that he was dead from the bullet wound in his head. The doctor also noticed the two cartridge cases near the body. They were subsequently picked up by a German police officer and it was established that they were fired from the weapon found in Stein's possession. At about 3:00 a.m., on July 23, 1951, and after the crime was reported, an investigation started in the unit to which the accused were assigned and Sizemore was identified as one of the men who was present at the restaurant prior to the shooting. While being questioned Sizemore made certain statements which implicated Stein and this resulted in a search of the lockers belonging to both men. Bloody clothes were found in each man's locker and a pistol used in the slaying was found in Stein's. A later examination of the clothing established that they were stained by human blood of origin "Type A," the same as that obtained at the scene of the killing. Without a doubt the chain of circumstances points unerringly to the appellants as the perpetrators of the crime and it is corroborated by the confessions of the appellants. Each related his version of the facts and circumstances with sufficient detail to remove all doubt concerning their guilt. Appellant Stein first admitted the killing but contended that the pistol was discharged accidently. He, however, retracted this story and in a second statement, in essence similar to one given by Sizemore, related the gruesome story of shooting and robbing the victim. This is the substance of his statement: That he and accused Sizemore were in a German cafe in Kathus, Germany; they were low on finances and discussed ways and

**575**

means of getting some money; they agreed to hire a German taxi and rob the driver of his money; they had a German civilian in the cafe call a taxi and when it arrived they seated themselves with Sizemore next to the driver and Stein in the rear seat; after traveling approximately one kilometer Stein ordered the driver to stop and when he complied, Stein shot him in the back of the head; he then jumped out of the taxi, pointed the pistol to the ground and pulled the trigger causing the weapon to fire; he proceeded to the left side of the vehicle and tried to lift the taxi driver from the seat but due to his weight, it required both appellants to remove him; after dropping the driver on the ground, they searched him and rifled his pocketbook; each appellant took seven marks from the purse and then departed in the taxi; after driving around for some time, they returned to their unit and changed the clothes which were covered with blood; and then they were taken into custody.

The foregoing resume of facts establishes clearly a cold-blooded and deliberate murder, without excuse, justification or extenuating circumstances. As is quite often true in military cases, there are no disputes in the facts to be reconciled as there is no testimony which rebuts that offered by the Government. This, of course, bears on the issue involved in view of the Court's holding that the substantial rights of the appellants were prejudiced by the law officer's denying a request for a ten-minute continuance. It is well recognized that any defendant has the right to have his case argued before the court-martial and this right can be waived. But, it is likewise recognized that he is part of a system which must be governed by a set of well-defined rules which cannot be tailored to meet the individual idiosyncrasies of defending counsel. Certainly if a defendant seeks to charge a law officer with having violated the rules by denying his counsel time to prepare for argument, the lack of issues of fact can well be considered in determining whether the law officer acted reasonably in denying the request.

There are a number of issues raised by appellants in their petition to this Court, but for the most part, they were considered and found to be without merit by a board of review. However, in its decision the board pointed out two errors which it held to be prejudicial. The first combined an abuse of discretion by the law officer with lack of effective representation, and the second concerned the giving of erroneous instructions by the law officer. We did not restrict appellants in assigning error but the court's opinion disposes of the assignments contrary to appellants' assertions. I concur with those dispositions. This, therefore, leaves what I believe to be two issues upon which we part: (1) Did the law officer abuse his discretion in denying the motion for a continuance, and (2) were the accused denied effective representation? I shall discuss these in the order mentioned.

The law books are literally filled with cases which announce the rule that the granting or denying of a motion for a continuance is within the sound discretion of the trial judge. To cite any would be a work of supererogation. This rule, if transplanted to the military judicial system, and followed by us, would vest this power in the law officer. Article 40 of the Uniform Code of Military Justice, 50 USC § 615, authorizes the granting of a continuance on a showing of good cause, and the Manual for Courts-Martial, United States, 1951, paragraph 58b, grants to the law officer the power to continue a case if the trial is in progress. The majority finds the rule well expressed and well established but prefer to ignore it. To date our record has been one of holding any refusal to grant such a motion to be an abuse of discretion. I suppose law officers should glean from this that a request by an accused for a continuance must be granted as a contrary ruling is fatal to the conviction. I must concede that if law officers always acted with patience and forbearance and yielded to every request of an accused the number of appeal would be reduced. Undoubtedly we would not be required to review cases to determine the powers of the law officer in administering the affairs of his court as none would get beyond the trial stage. However, the trial of a case must end and a

law officer, to accomplish this, must be forceful and at times adamant. The trial of a criminal offense is a practical business and delays favor an accused. He is content to delay forever his possible conviction as any defending lawyer well knows. Law officers must expedite the court business and in doing so must separate the legitimate request from the unfounded. If we expect them to rule perfectly, we are visionary and impractical. They are human beings who, in the confusion of a case, cannot meet the standards that we, in the quiet of our chambers, vision as the ultimate. They do not have the time to consider and ponder over questions presented in the course of a trial. On the contrary, they must rule repeatedly and forthwith. Moreover, opportunities to anticipate the ultimate results of a ruling are not presented. Therefore, we must give consideration to the limitations inherent in the system and the best result we can expect is that their rulings be non-prejudicial.

I appreciate fully the futility of my dissent in this case but I prefer to state my views because the ruling, if followed in subsequent cases, will be catastrophic to those orderly processes of trial I feel are necessary to a successful operation of the system. In our previous opinions we have likened our system to that of the Federal civilian system and we envision a law officer as our trial judge. Yet we deny him any right to demand orderly procedure in his courtroom. If he is rendered powerless to deny motions, a contumacious and obstreperous lawyer can delay and frustrate the prosecution of his client by the simple expedient of demanding a continuance. When, and if, one is refused, we proclaim loudly that the law officer erred. It may well be that I have been reared in a climate different from that of my associates, but I cannot believe a lawyer practicing before any Federal court in the United States would have the temerity to suggest to a Federal judge that he be granted a continuance under facts and circumstances closely approximating those found in this record. Now the plain truth of the matter is the lawyer involved in this case did not need any such a continuance for the reasons

he advanced. I suggest that a reading of this record will portray clearly that he was familiar with legal procedure; that he knew the facts of the case; that he was well acquainted with the law; that he was fully aware of the fact that he would be required to argue the case shortly after the court-martial reconvened from a three-hour recess; and, that he could have argued the case at the time he was ordered to proceed. It may well be that had either of my associates been sitting as the law officer in the trial of this case, he would have granted this request; but the test is different from that. Every difference of opinion as to whether the best procedure was adopted does not pose a question of the abuse of discretion. To exercise an honest judgment, even though it be not the best, can hardly reach that depth. To me the term "abuse of discretion" means a ruling clearly against reason and one which cannot be defended by any reasonable interpretation of the facts upon which it is based. To my associates it must mean much less.

I assume the majority of the Court accepts the rule they so often announce, namely, that each case must be decided on its own facts and circumstances, yet I am particularly impressed with the lack of the development of any background in the majority opinion. One transaction isolated out of the trial involving some twenty-three witnesses and two hundred pages of record can be painted as being capricious and arbitrary but if shown in connection with all of the facts and circumstances it might appear to have an entirely different effect. It is to exhibit its true perspective that I mention the facts and circumstances leading up to the ruling which is the basis for the reversal. The appellants were brought into court for arraignment on August 21, 1951. Counsel who tried the case for them at that level was given an opportunity to examine members of the court on voir dire and after finding no reason to challenge for cause he exercised one peremptory challenge. He then made a motion for a continuance based on the grounds that the seriousness of the offense justified granting him an opportunity to prepare fully for the defense.

The law officer looked with favor on the motion, granted it, and the trial of the case was continued for a period of thirty-four days, an unusually long time for the military. At that time defense counsel had been in the case for seven days and had interviewed some of the Government witnesses. The court reconvened on October 2, 1951, and the appellants were advised that any motion should be made at that time. None was offered and no contention was advanced that the defense was not ready to proceed with the trial.

It is not necessary to set forth in detail all of the incidents which occurred during the taking of testimony and which evidenced an intent on the part of the law officer to protect assiduously the rights of the appellants. Suffice it to state generally that he repeatedly sustained objections made by defending counsel; he refused to admit any exhibit until it was, with certainty, connected up with the appellants; he refused to admit stipulations until he made certain they fully understood their contents and legal effect; he permitted wide latitude in the cross-examination of witnesses; he explained carefully the rights of appellants to testify on the involuntariness of their statements; when Stein was on the witness stand he advised him not to answer a question asked by his own counsel for the reason that it might subject him to cross-examination on his guilt or innocence; he heard extended argument on the voluntariness of the confession at the time it was admitted in evidence; and, he showed considerable tolerance toward defending counsel, who on two occasions apologized to the court for his discourteous conduct and remarks.

The Government finished its case during the afternoon of the second day of trial and rested. At that time defending counsel requested a continuance until the following morning. This request was granted so that time was made available to him to chart the nature and course of his defense. When the case continued the following morning, the prosecution requested permission to present testimony to clarify some of the details about which there was some uncertainty. One witness was called and

disposed of in short order. Trial counsel then informed the court that there was another witness who should be called but he was not present in court and that a continuance was desired until he could be produced. The law officer refused to grant the request and ordered the trial to continue. He did, however, state that if the court later decided the witness' testimony was important he could be called as a court witness at a later time. The prosecution then rested and defense counsel attempted to delay the case by insisting that he then be granted a continuance. When this request was refused and he was directed to continue he made a motion for a finding of not guilty which was overruled. The law officer then very carefully explained to the appellants their rights as witnesses and they were afforded an opportunity to consult with their counsel. A suggestion was then made by defense counsel that the law officer consider a short recess but he declined. The appellants elected to remain silent; the defense rested; and, the court called one witness. At 10:00 a.m. the law officer ordered a recess but all parties were placed on notice that the court might call a witness. The court reconvened three hours and ten minutes later and when it was again called to order the witness testified solely for the purpose of completing the chain of custody of a bullet. Prior to this time all prosecution exhibits had been admitted except No. 7 which was one fired bullet. The law officer had refused to admit this out of a superabundance of caution. He apparently concluded the Government must follow it through the hands of all who had it in their possession. The witness called had handled the bullet and when he accounted for passing it from one witness to another, the exhibit was admitted. One other witness who had previously testified in the case was called by the court and was asked four questions apparently to clear up some uncertainty with respect to his previous testimony. Not one bit of testimony was produced which in any way changed the complexion of the mass of the evidence, and the expected testimony to be given by the

**578**

witness was well known to defense prior to the continuance.

After the final and relatively unimportant details were completed, the law officer closed the taking of testimony and made the usual announcement that in view of the fact that both sides had rested, the parties would proceed with their arguments. Defense counsel had a perfectly good opportunity at this time to suggest that he was not prepared to proceed, but apparently the time was not apropos. The law officer announced that he would not limit either side as to the time they might use in arguments and he then directed the prosecution to proceed. The trial counsel made a very short opening argument which is reported in the transcript and can be read in less than one and one-half minutes. It hardly amounted to a fair resume of the facts and it certainly is a fair inference that he intended to save some of his time for answering arguments made by defense. The opportunity was lost because when the law officer called upon the defense to proceed, the latter stated "May the defense, on the defense counsel's request and not because the two accused, request a ten minute recess?" The law officer requested the purpose of the recess and the defense replied "to get my thoughts together." The request was denied and the law officer then afforded him another opportunity to argue on behalf of his clients. Defense counsel remained contumacious and adamant and refused to proceed. This is his answer to the admonition to proceed: "The defense is not ready at this particular moment to make any argument." The law officer then proceeded to instruct the court on the elements of the offense and the court-martial retired to deliberate on the finding.

If the foregoing facts show caprice on the part of a law officer, then I wonder just how protective and defending he must be to escape a charge that he has abused his discretion. Must he meet every demand made by an accused, and if not, under what possible circumstances can he say no? If this holding is to set the pattern of behavior for law officers, it is a certainty he must never answer a request in the negative.

The rationale of the majority opinion seems to be this: the request could have been granted, without harm to anyone, so the law officer cannot refuse. The fallacy in that concept is that it overlooks the right of the law officer to shape the orderly processes of the trial. He can always meet the demands of a defendant if he so elects but in so doing he can very definitely ruin a system. However, as I previously suggested, the problem with which we are concerned is not whether the law officer could have granted the request but rather does he have the right and power to do otherwise. It would appear to me that some latitude ought to be granted to those officers to weigh the merits of the request against the necessities of maintaining an orderly system. Let me assume for a moment that every request for a ten-minute recess is a modest one. Is modesty the test by which we will measure discretion? If so, trifling requests may become the source of endless difficulty. This case appears to be a perfect example. The request, even though modest, borders on absurdity. As a matter of fact the court members could hardly get out of their chairs and back during the period of time requested and if the defending counsel needed no more time than that, he could have collected his thoughts before he started his argument. Some lawyers can think while seated at counsel table with the court in session and most are required to think while they are talking. Not all are entitled to the luxury of a delay to permit them to cogitate.

Up to this point I have purposely omitted discussing defense counsel's conduct after the law officer's ruling because that should be isolated from the factors used to determine an abuse of discretion. In making his ruling, the law officer is not chargeable with contemptuous acts of defending counsel which are taken after the ruling and with full knowledge of the consequences. The fairness of the ruling must be determined by what is known and disclosed at the time it is made. This was the situation facing the law officer at the time he announced his ruling. He had given the appellant one thirty-four-

day continuance before trial and one late afternoon continuance the day before the particular episode. On the day involved, he had denied the prosecution a continuance and then recessed the court for better than three hours. The evidence produced after reconvening was of no great importance as winding up the incidental details occupied little time. The court had just been reconvened and less than thirty minutes had expired before the request was made. Finally, the reason assigned, considered in the most charitable light, was inadequate.

I can well understand why a law officer would consider the request amazing and pay little attention to it. That it was not founded in reason is established clearly by the record. Stretched to its elastic limit it could cover no more than a weak excuse that one witness had testified. That was the only excuse assigned by counsel. Does that entitle a lawyer to a continuance as a matter of right? Unless it does, there could be no error as prior to his request, defending counsel had shown he was well aware of every fact and circumstance necessary to be argued. Twice during the one and one-half minutes trial counsel was arguing he had questioned the accuracy with which facts were being related and his objections showed he had a working knowledge concerning all evidence introduced. When a ruling denying a motion for a continuance is fortified by a record such as this one, I cannot understand why we criticize a law officer for bad judgment and concur in a reversal of a case for that reason.

The members of a board of review gave careful consideration to this issue and reached the conclusion that the law officer abused his discretion. I believe it well to set out their reasons and why I do not subscribe to their philosophy. The opinion states:

"It has been said that 'by an abuse of discretion is meant action which is arbitrary, fanciful, or clearly unreasonable' (United States v. McWilliams, 163 F2d 695, 697 (DC Cir 1947)). In the instant case the law officer's action in denying the recess was arbitrary in that it was taken

without consideration of the basic principles outlined above regarding rights to time; it was fanciful because it was a sudden capricious change from the spirit of fairness evident in his statement, made shortly before this ruling, that he would not limit argument and because there was no apparent motivation for the change (unless motive appears in his remarks pertaining to a long lunch-hour recess and the short session of the court thereafter—see infra; and it was unreasonable in that it denied a reasonable request."

It necessarily follows that any ruling which denies a motion can be characterized as arbitrary, but because a law officer authorizes unlimited time for argument does not demand that he grant unlimited time for continuances. The board reasons the ruling was fanciful because the law officer changed from a spirit of fairness without motivation. That statement is predicated on his generosity in allowing time to argue and his refusing to be generous in granting a continuance. It should go without saying that when different reasons motivate a person in making two rulings, it is not fanciful because one may appear to favor an accused while the other may not. I believe both rulings can be justified in reason and experience. Lastly, the board concludes that the request was reasonable. I have outlined my reasons for disagreeing on that aspect of the case and while the board emphasizes the importance and extent of the evidence introduced after the luncheon recess, I am content to rely on the record and defense counsel's own statement as to the extent of the evidence with which he was concerned.

The second question which should be developed is: Were the accused denied effective representation? The record is the best testimonial that they were not. Moreover, I would say that if we were to judge by results, the answer would be an emphatic no. It is a pleasure to read a record which shows a working knowledge of trial tactics—and this one does. These accused were charged with a felony murder carrying a maximum sentence of death, and with robbery

carrying an additional sentence of ten years. They were found guilty of the former and not guilty of the latter. Defending counsel challenged the findings immediately upon their being returned as being inconsistent; and apparently as a result of this effort, the convening authority reduced the offense to murder unpremeditated. The record supports overwhelmingly the finding of guilty of the greater offense of felony murder and the appellants in their pretrial statement confessed to a robbery. Yet, as a result of counsel's efforts, his clients are now relieved from any and all convictions. If that is inadequate legal assistance, I wonder what kind of representation has been received by some of the other appellants whose convictions we have affirmed.

The only possible ground upon which anyone can suggest inadequate representation is that defending counsel chose wrongly when he refused to argue. Subsequent developments show otherwise. Be that as it may, I think we are all agreed that the right to argue a case is a valuable right and cannot be taken away. I go one step further and contend that it can be waived either by express consent or by acts which in law amount to a waiver. This counsel could have waived his argument. Many a clever lawyer refuses to argue when the prosecution presents weakly its opening argument. By doing this any advantage the Government has in having the final say and pointing out the weak spots in the defense is removed. Can an appellate court find inadequate representation if that procedure is used? And can we find in this case that counsel did not knowingly and willingly refuse to exercise his right and perhaps for a good reason? As a matter of fact the record best bears out why this counsel could profitably refuse to argue. There were no serious disputes in evidence; there were no missing links in the chain of circumstances; the law officer had required the removal of any doubt about the identification of the exhibits; the evidence of identity of the perpetrators of the crime was unattacked; the credibility of the witnesses had not been impaired; and appellants had confessed to the crime. With that evidentiary picture facing counsel his choice was simple. If he argued he could expect little sympathy from the court-martial and he would have cured any error in the ruling. On the other hand, he could refuse to argue and preserve the error, if any. He chose wisely. This brings me back to the question of inadequate representation. Wherein did this counsel fail?

Just to foreclose any possibility that someone might contend that an affirmance of this judgment would result in a miscarriage of justice, I make a few remarks on that subject. In the first place, the evidence is not uncertain nor doubtful. If there is any defense to the charge, it is hidden away in some undisclosed recess. Certainly it cannot be seen in the record or allied papers. In the second place, inherent in a miscarriage of justice is legal prejudice. That flows from the denial of a right not from the wilful refusal to exercise it. Here a competent lawyer was afforded reasonable opportunity to use the right and he chose to discard it. A calculated risk taken by one who fully understands the possible consequences ought not to be turned into legal prejudice.