UNITED STATES, Appellee

v

WALTER C. HEINEL, Colonel, U. S. Army, Appellant

9 USCMA 259, 26 CMR 39

No. 10,076

Decided May 23, 1958

 

*Frederick Bernays Wiener, Esquire,* argued the cause for Appellant, Accused. With him on the brief was *Colonel James M. Scott.*

*First Lieutenant Richard W. Young* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel John G. Lee* and *Major Thomas J. Nichols.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was the Commanding Officer of the Boston Army Base. Charges were brought against him for obtaining meals, haircuts, tailoring, and other services from facilities on the base by an abuse of his authority. He was also charged with violating general regulations by using the official motor pool for private purposes, with wrongful association with enlisted personnel, and with dishonorably inducing a married woman to abandon her husband. Brought to trial before a general court-martial he entered a plea of not guilty. Excepting certain allegations in the several specifications, the court found him guilty of all charges and sentenced him to dismissal and total forfeitures of all pay and allowances. Intermediate reviewing authorities affirmed. The accused appealed to this court setting out nine assignments of error.

Before charges were preferred, the accused's conduct was investigated by the Inspector General, Headquarters, First Army. A number of witnesses made statements to him concerning the accused. The Inspector General's report and the formal charges against the accused were forwarded by the Commanding General, First Army, to the Commanding General, Fort Devens, Massachusetts, for "appropriate action." The Inspector General's report was to be returned to First Army when "pertinent information has been extracted." In due course, an Article 32 investigation was held in which the accused was represented by Lieutenant Colonel Slattery, a member of the Judge Advocate General's Corps. The investigating officer considered a "summary" of expected testimony of numerous witnesses. On July 19, 1956, Colonel Slattery sent a letter to the Commanding General, First Army. In it, he reviewed the proceedings against the ac-

**260**

cused. Particularly, he referred to the Inspector General's report and expressed the belief that the Staff Judge Advocate's office at Fort Devens prepared the summaries of expected testimony, which were considered by the investigating officer, from the testimony of the witnesses before the Inspector General. He noted that one of the witnesses later discovered that his testimony before the Inspector General was in error, and he had expressly requested a representative of the Inspector General to correct the error; the summary of his expected testimony, however, did not reflect the change. Counsel maintained that it was "material to the preparation of the defense" to inspect or to be furnished a copy of the actual testimony of each witness listed on the charge sheet and of the witnesses whose testimony had been forwarded with the charges. He represented that he was not asking for, and did not want "any information that affects the National Security of the United States." On July 27, the Commanding General, First Army, wrote to defense counsel informing him that the request had been referred to the commander of Fort Devens for action. The next day the case came on for trial.

After arraignment but before the plea, defense counsel moved for production of the transcript of the testimony of the witnesses and for time in which to examine it. In support of his motion he argued that he had questioned various witnesses and had ascertained that there were discrepancies between their present recollection of the facts and the summaries of expected testimony. The law officer determined, by inquiry, that except for study of the transcript, the defense did not need additional time to prepare and it had no complaint in regard to the legal sufficiency of the Article 32 investigation. He then denied the motion. He advised defense counsel as follows: "If it appears that a witness is testifying untruthfully, or has made an inconsistent statement, we will consider that portion—the production of that portion of the Inspector General's report."[1]

During the afternoon of the first day of trial the prosecution called four witnesses. The first witness mentioned the investigation but did not say whether he had testified; the second witness denied that he had been questioned by anyone from the Inspector General's office; the fourth witness did not say anything about the investigation. The third witness was subjected to searching cross-examination in which he admitted that he had been questioned by the Inspector General. The law officer called counsel to the bar and indicated that since there might be inconsistencies between the witness' testimony and his earlier statements to the Inspector General the transcript of his testimony in that investigation would be made available to the defense. Defense counsel said that he would like to read the transcript but he was not "withdrawing" from his original motion. At the conclusion of the side bar conference, the witness was excused. The next morning, in an out-of-court hearing, the law officer advised defense counsel that he had talked with the staff judge advocate and had been informed that "all of the testimony taken in the Inspector General's investigation" was available for inspection by the defense. Defense counsel contended that the offer was "of no value" unless he was accorded a reasonable time to examine the material. The law officer interrupted counsel's remarks, and closed the conference with the comment, "Let's . . . get on with this case." When court reconvened, defense counsel moved for a forty-eight hour continuance to examine the Inspector General's transcript. The motion was denied. Sometime during the noon recess, defense counsel was given a transcript of the testimony of the witnesses before the Inspector General. On returning to the courtroom, he renewed

---

[1] Apparently the law officer did not consider the possible application of paragraph 44h, Manual for Courts-Martial, United States, 1951, which, in part, provides that trial counsel, "Except as otherwise directed by the convening authority, . . . will permit the defense to examine from time to time *any paper accompanying the charges,* including the report of investigation." [Emphasis supplied.]

his motion for a continuance for a "reasonable time" to examine the transcript, which contained over 300 pages. This motion was also denied. Five other witnesses testified for the prosecution before court adjourned for the day.

The accused assigns as error the law officer's rulings on the various motions in regard to the Inspector General's transcript. In support of his argument he relies upon the decision of the United States Supreme Court in Jencks v United States, 353 US 657, 1 L ed 2d 1103, 77 S Ct 1007 (1957). In that case the Supreme Court held that it was prejudicial error to deny the defense inspection of reports to the Federal Bureau of Investigation made by prosecution witnesses which recounted "events and activities related in their testimony." The court held that the defendant's right to inspection did not depend upon a preliminary showing of inconsistency between the witness' previous statement and his testimony at the trial. In part, the Court said (page 667):

"Requiring the accused first to show conflict between the reports and the testimony is actually to deny the accused evidence relevant and material to his defense. The occasion for determining a conflict cannot arise until after the witness has testified, and unless he admits conflict . . . the accused is helpless to know or discover conflict without inspecting the reports."

Applying the rationale of the *Jencks* case to the facts here, it is clear that the law officer was wrong in deciding that the defense was not entitled to the transcript of the testimony of a witness before the Inspector General until it appeared that he was "testifying untruthfully, or has made an inconsistent statement." The right to inspection arises as soon as it appears that the witnesses have submitted earlier statements on matters "related in their testimony." Jencks v United States, supra, page 1012.

If denial of the initial motion was the extent of the law officer's error, the accused would have little cause for complaint. He was, in fact, given a transcript of the testimony. However, possession is not enough. Unless he has a reasonable opportunity to inspect the transcript, physical possession is insufficient. Consequently, the law officer erred in denying defense counsel a continuance for the purpose of examining the lengthy transcript to determine what use to make of it. See 18 USC § 3500; cf. United States v Sizemore, 2 USCMA 572, 10 CMR 70; United States v Frye, 8 USCMA 137, 23 CMR 361.

Government counsel maintain that since defense counsel had physical possession of the transcript he could have examined it during the remaining days of the trial, and if he found inconsistencies he could have recalled the prosecution witnesses for further examination. The Government's argument presupposes a duty on the part of defense counsel to act in the premises. We have emphasized that a trial is not a game. Thus, we have refused to allow an accused to assert error at this level when defense counsel at the trial withheld objection to known improper conduct by trial personnel until after an unfavorable verdict. United States v Wolfe, 8 USCMA 247, 24 CMR 57. We have also refused to allow a claim of error based upon conduct induced by defense counsel. United States v Jones, 7 USCMA 623, 23 CMR 87. And we have held that defense counsel's failure to object at the proper time will preclude consideration of the error on appeal. United States v Fisher, 4 USCMA 152, 15 CMR 152. However, we have not held, and the law does not require defense counsel to take affirmative action later in the trial to cure an earlier erroneous ruling by the law officer to which proper objection had been interposed. Cf. United States v Smith, 7 USCMA 102, 21 CMR 228. We conclude, therefore, that under the circumstances of this case, the accused was prejudiced by the law officer's denial of a continuance.

In view of our holding it is unnecessary to dispose specifically of other claims of error by the accused. The

findings of guilty and the sentence are set aside. A rehearing may be ordered.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

This opinion gives me considerable concern, for it falls in that category of reversals which eat away the vitals of an effective court-martial system. On many occasions we have proclaimed the principle that a law officer should be the equivalent of a Federal judge and yet, by decisions such as this, we leave him as putty in the hands of clever but vexatious defense counsel. We say the granting or denial of a motion for continuance lies within his sound discretion, but when he rules against an accused, the presumption seems to be that he erred. That must be the controlling principle here, for, as I hope to show, even a cursory reader of the record would find overwhelming evidence to support his denial.

The accused was represented by an aggressive trial defense counsel who used every stratagem to aid his cause. He represented his client well but, in my view, he proceeded under a theory that a trial by court-martial is a game in which the prize goes to the defense lawyer who can delay the final judgment, confuse the issues, and hamper the progress of trial by making numerous dilatory motions. When he moved for production of the Inspector General's transcript, trial counsel resisted the demand on the ground it was untimely. Trial defense counsel, apparently to aid this appeal, filed an affidavit seeking to justify his reasons for making a belated motion. A reading of his affidavit is indeed illuminating, and I use his averments only for the purpose of showing why his self-admitted method of operation was calculated to interfere with the timely trial of the accused. He was the executive officer in the office of the staff judge advocate at Fort Devens, Massachusetts, where this case was tried. According to his sworn statement, he asserts he had no *actual* knowledge that a copy of the Inspector General's investigation was in

his immediate superior's possession for some six weeks prior to trial, although he occupied the same office. He, however, relates many circumstances from which he concluded there was a copy in his own Headquarters, but he is very careful to point out that he was not absolutely certain. Of course, as he states, he did not ask his immediate superior if a transcript was available which he might read because that would have ruined his chances to claim due diligence if he subsequently sought to make it the subject of a motion. To avoid asking anyone at Headquarters, he started a roundabout method of discovery. He submitted sixteen pages of averments in his efforts to present a convincing argument that he did not actually know what any reasonable defense counsel would have known. To avoid learning the truth firsthand, he interviewed witnesses for at least six weeks to obtain the desired information. So far as I can ascertain, all he had to do was to ask his immediate superior but, instead of doing that, he waited until "during the course of these interviews . . . enough was said . . . to enable . . . [him] to conclude" there was a transcript, and then only nine days prior to trial he forwarded a letter to higher headquarters asking for the right of inspection. It does not require much in the way of imagination to know why that method of operation was adopted. Either he was hoping to catch the Government in error in the preliminary proceedings or he was seeking to bide his time and cause confusion after the trial started. In connection with the last reason, I suggest that waiting in silence is a trick of the trade because, had a request been made seasonably, there would have been adequate time for the Government to have furnished a copy of the report of investigation. But, of course, had that action been taken, the defense would not be able to put the law officer in a position of weighing the merits of a motion for continuance against orderly court procedure. As to the first reason, tactics such as those should be discouraged as they tend to make criminal litigation a game of chance. Unfortunately for the Government, the strategy adopted

**263**

pays dividends in the way of a reversal, for the Court now finds that the accused was prejudiced because his counsel was denied time to become acquainted with the contents of the report.

I often read passages in my associates' opinions which announce the well-accepted principle that each case must be decided on its own facts. With that I agree, so I move on to relate some further evidence *aliunde* the affidavit of defense counsel which shows the motion should have been denied because of untimeliness. The calendar of events is very helpful. Charges were sworn to by the accuser on May 11, 1956. They, together with the expected testimony of thirty-seven witnesses, were served on the accused on the 6th day of June 1956. Defense counsel, a certified lawyer of the rank of lieutenant colonel, was notified he would be appointed counsel to defend the accused sometime prior to June 7, 1956. On that date, he was directed to represent the accused in the taking of depositions. On June 12, 1956, a pretrial hearing was held, and he concedes it was complete and regular in all respects. He had an opportunity then to find out about an inspection of the transcript and any possible inconsistent prior statements, since, before that time, he had been furnished a summary of testimony of each witness who had been interrogated by the Inspector General and, by his own admission, he had discussed with many the nature and extent of their expected testimony. He had also discussed with the accused the evidence each witness had given to the Inspector General. When the case was referred for trial on June 20, 1956, he requested a thirty-day continuance to prepare his defense. In full possession of substantially every bit of Government testimony and lacking only the one aid to cross-examination, it was not until July 19, 1956, that he composed a letter—which he knew had to be forwarded by mail to a higher headquarters located at Governors Island, New York—requesting that the transcript of testimony be furnished the defense. Furthermore, he claims to have left it on the desk of the staff judge advocate and that it was not mailed before the

21st day of July 1956. Some six weeks had passed between his appointment and the dispatch of the letter, and trial was then only nine days away. He can hardly claim due diligence under those circumstances, and his failure to act promptly would alone support the law officer in not granting a continuance for the reasons given.

But there are other facts which show that the law officer did not abuse his discretion. When the motion to produce the report of investigation was made, the law officer relied on the principle that the accused was only entitled to have those portions of the transcript which indicated some inconsistency in a witness' testimony. In denying the motion, he stated:

"LO: I may say this: It is understood, of course, that if, during the course of the trial, any portions of that investigation are introduced, any exhibits or testimony, or if there appears any inconsistency in the statements of the witness who appears at that time, you may consider the production of that portion of the Inspector General's investigation which relates to that particular matter. If it appears that a witness is testifying untruthfully, or has made an inconsistent statement, we will consider that portion—the production of that portion of the Inspector General's report. Otherwise, the motion for the production of the report in its entirety is denied."

Thereafter, and in accordance with his ruling, the law officer directed trial counsel on the first day of the trial to produce for defense counsel's inspection all of that portion of the Inspector General's investigation which included the statements of the third witness of the four called by the prosecution that day. Defense counsel was to inform the law officer on the following day if he had not had access to it. The next day trial counsel announced in open court the names of the witnesses he intended to call that day and was in the process of examining the second of them when an out-of-court conference was called in which the law officer ruled the Inspector General's report in full was to be made

available to the defense. When court reconvened, the following dialogue between defense counsel and the law officer is recorded:

"DC: If it please the law officer: In the light of the statement that the law officer made during the closed conference relative to the Inspector General's investigation, the accused, at this time, moves for a continuance of this trial until tomorrow morning at 0930 hours, for the purpose of examining the material that is now available to us, to see whether it will assist us in the preparation of the defense of this case.

"LO: The motion for a continuance is denied. We will proceed as we are going now, and you may examine the Inspector General's report after the court closes this afternoon or at lunch.

"DC: I am sure you are aware of the size of the Inspector General's report. Although we have never seen it we are led to believe it is voluminous. I don't believe in all fairness to the accused it could be examined during our lunch hour or after the court closes tonight. *We will have to do it on our own time, and I think that we should have a right to do it during our duty time.*" [Emphasis supplied.]

The witness' examination was completed by both counsel and the court, and the law officer ordered a recess from 11:00 a.m. until 1:30 p.m. to give defense counsel an opportunity to examine the witnesses' testimony as reflected in the report. When court reconvened, defense counsel informed the law officer that the transcript had been delivered to his possession but that it contained over three hundred pages of testimony. He thereupon moved for a continuance of some forty-eight hours. The motion was denied and the trial proceeded with the examination of three additional witnesses called by the Government. The court was adjourned at 3:40 p.m. and the next day, as court opened, defense counsel requested that one of the last three witnesses be recalled for further cross-examination. This witness' recall was permitted by the law officer,

and defense counsel, after cross-examining him upon his former testimony, introduced in evidence for impeachment purposes six pages of the witness' testimony as reproduced in the Inspector General's report.

The report in question, excepting a true copy of the six pages of testimony previously mentioned, is not to be found in the appellate record, but the perusal of three hundred pages of an ordinary transcript for inconsistent statements of witnesses is not a herculean task. Certainly, familiarization with the full document was not needed on any particular day and it was in possession of defense counsel for some seven days prior to findings. It could be used only for impeachment purposes, and approximately one-half of the witnesses interviewed by the Inspector General were used at trial. Trial counsel had been directed to announce his witnesses for the following day, and defense counsel had been informed that any witnesses could be recalled for cross-examination, if desired. Those precautionary measures assured the accused ample opportunity to protect his rights.

A law officer has the right and duty to see that trials are conducted in an orderly fashion, and he has some discretion to demand that they be completed without unnecessary delay. If the court is to function expeditiously, counsel cannot be permitted to set the clock. No doubt as a result of the denial defense counsel might have been required to read the relevant portions of the transcript beyond duty hours, but that is not unusual. Most civilian trial counsel find that they must work evenings when engaged in the trial of a lawsuit, and military counsel must be prepared to do likewise. The defense here demonstrated that the ruling did not handicap their cross-examination of one witness called that very day, and so far as this entire record is concerned, he is the only one who was subject to possible impeachment by some variations with his prior testimony. But, in addition, the law officer on more than one occasion let it be known that, if the defense needed further time to study the report, he would entertain their request for that purpose. In fact,

near the end of the trial in an out-of-court conference, he made the following statement:

"LO: If you need any additional time to prepare a defense, if you have any additional witnesses, if you need any further time, even though you have rested, if you have a reasonable reason, we will give you additional time, but we will not continue this case merely for the purpose of procrastinating. Yesterday afternoon, the defense requested an adjournment until next Monday at the time when a number of witnesses were sitting out in the hall and certainly were in a position to testify. The continuance was not granted and the witnesses went on the stand and there was nothing hurried about their examination."

When the denial of a continuance with which we are concerned is considered in the light of this record, making it the base for a reversal is out of all proportion to its importance as a trial incident. There is absolutely no showing that defense counsel was denied the effective use of the prior testimony. The testimony of fifteen out of twenty-one Government witnesses was given after defense counsel was in possession of the record. The only purpose for which the contents of the investigation report were relevant was for possible impeachment of Government witnesses and this record attests to the fact that it had little, if any, utility in that field. Having been given the prior testimony of the witnesses as it was extracted from the report, defense counsel was apprised of all the material evidence he would be compelled to meet. At least thirty-seven witnesses appeared before the Inspector General, and only twenty-one appeared at trial. Counsel could have easily ascertained any inconsistencies between the previously recorded testimony and that developed at trial. In addition to scanning through the record during the evenings, the trial was recessed over a week-end, and defense counsel had ample opportunity to study carefully the prior statements of all but five witnesses before they left the witness chair; and as to the five, they were

subject to recall. Therefore, this is not a case of the defense being denied an aid to cross-examination while it was useful; this is merely a defense attorney skirmishing to force a court-martial to fix its sessions to meet his demands. If a law officer is to be reversed because he fails to operate a court-martial to meet the convenience of defending advocates, then his authority as a judge is sadly impaired.

For my final discussion, I will assume *arguendo* that the law officer should have granted the motion. But then I ask, where is the showing of prejudice? Every witness was available for cross-examination after the record was received by the defense, and had there been any inconsistencies they could have been brought to the attention of the court-martial by the simple expedient of recalling the witness. In the trial of a case, if the credibility of a witness can be shaken by showing prior inconsistent statements, it matters little when the examination is conducted so long as it is permitted before findings.

With the exception of the one witness, defense counsel failed at the trial, and in his lengthy affidavit, to point out any inconsistencies which he could have developed had he been granted the continuance. The burden is upon him to show he was in some way harmed by the denial and that showing is just not in this record. Furthermore, the board of review found that from the date of the trial to the hearing of arguments before it,

". . . trial defense counsel and appellate defense counsel have had time to check and double check the testimony of the witnesses at this trial against their testimony before the Inspector General—and, yet, not one single inconsistency in any testimony of any witness has been asserted in anything filed in this case. We can not see that accused has demonstrated any prejudice to any of his substantial rights through the denial of the requested continuance."

Before this Court, appellate defense counsel go no further than to allege that trial defense counsel did not have

266

time to study the record in time to use it properly. For reasons previously advanced, I know not why, and I am not furnished with any help in that regard by my associates on this Court. Under that state of the record, I mention our words in United States v Nichols, 2 USCMA 27, 6 CMR 27:

". . . We believe that law officers should weigh carefully the merits of a motion to continue and if it appears reasonable that it is not made on frivolous grounds or solely for delay, the request should ordinarily be granted. However, the burden still remains on the moving party to justify the motion. Counsel for accused has the responsibility to make a full and fair disclosure of the necessity for, and the nature, extent and availability of, the desired evidence. If he fails to do so, the law officer cannot be condemned."

See also my dissenting opinions in United States v Plummer, 1 USCMA 373, 3 CMR 107; and United States v Sizemore, 2 USCMA 572, 10 CMR 70.

One last matter bears comment. The terminal portion of the Court's opinion strikes me as being a misapplication of United States v Smith, 7 USCMA 102, 21 CMR 228. There we were concerned with a waiver, and nothing was said about defense counsel having to cure affirmatively an error which had been committed by the law officer. But, even if we did, under the facts of that case, what has that to do with the error presently under consideration? Surely a law officer can reverse a prior adverse ruling to aid an accused and, contrary to the assertion of the Court, the latter is required to take some affirmative action or suffer the consequences of his failure to act. If not, then many ridiculous situations may arise. By way of illustration, if a law officer erroneously refuses the admission of evidence favorable to an accused but later reverses himself, surely the defense is not in a position to refuse to reoffer the testimony and then obtain a reversal on appeal for the original error. If that is the law, I am taken by surprise for I thought a trial was not a game of wits where defense can play the part of the woman scorned. Courts exist for the purpose of ascertaining the truth and if an accused is offered an opportunity to develop fully his side of the controversy before the trial is over, he cannot reject the offer on the theory that he has the law officer in a strait jacket from which he may not extricate himself. This case is an example of that pattern of defense. After having the report for several days, the defense counsel was asked by the law officer, before the case was submitted to the court-martial for finding, if he needed additional time or wanted to examine witnesses further. Defense counsel replied in substance that the "bell had rung" and he was neither asking for additional time nor intending to recall any witness. He concluded he had trapped the law officer in error, and he was not going to permit his escape. He played his part well, but I am not willing to applaud the performance.

I would affirm the decision of the board of review.