UNITED STATES, Appellee,

v.

Staff Sergeant (E–6) Vernell BURRELL,
SSN 248–76–1726, United States
Army, Appellant.

CM 435123.

U. S. Army Court of Military Review.

21 April 1978.

Mr. Jan S. Strifling, and Captain John M. Zoscak, JAGC, argued the cause for the appellant. With them on the brief were Colonel Robert B. Clarke, JAGC, Lieutenant Colonel John R. Thornock, JAGC, and Captain Larry D. Anderson, JAGC.

Captain Gregory B. English, JAGC, argued the cause for the appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, and Captain Lee D. Schinasi, JAGC.

Before JONES, DeFORD and FELDER, Appellate Military Judges.

## OPINION OF THE COURT

JONES, Senior Judge:

The appellant comes before this Court convicted of escaping from custody on two occasions, absenting himself without leave in conjunction with the escapes, and possessing marijuana, in violation of Articles 95, 86, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 895, 886, and 934. The general court-martial with members sentenced him to a dishonorable discharge, confinement at hard labor for five years, forfeiture of all pay and allowances, and reduction to Private E–1. The convening authority reduced the period of confinement to four years and approved the remainder of the sentence as adjudged.

The appellant has assigned 28 errors.[1] Five of them merit discussion here.

---

1. The errors are contained in two different pleadings, one filed initially by appointed military appellate defense counsel and the other in a supplemental pleading authored by appellant and submitted by civilian appellate defense counsel. The two documents contain some duplication.

## I

■ The appellant argues that the military judge should have recused himself from presiding over the trial because of a lack of impartiality as demonstrated by the following remark made to trial defense counsel during a recess in a pretrial session:

"We're going to get the case over one way or another, and I could care less about reversible error."

The appellant maintains that this remark demonstrated the judge's inability to give appellant a fair and impartial hearing. We disagree.

To evaluate the military judge's qualification to preside, we must examine the remark in its proper perspective. The prosecution was experiencing difficulty in getting the individual civilian defense counsel to appear and defend the case. During a recess in the proceedings when individual counsel had failed to appear for the second time and the military judge was awaiting an explanation, one of the other defense counsel remarked that if the court-martial proceeded without individual counsel, the case would be reversed. It was in response to that assertion that the military judge made his comment. We find in the remark no lack of impartiality or disregard for the conduct of a fair and orderly proceeding. Rather, the comment is nothing more than the judge's statement that he must control his docket and conduct the trial to the best of his ability without undue worry about being reversed on appeal.

## II

The appellant alleges that he was prejudiced by being denied a verbatim transcript or the recording tapes of the Article 32 investigation. Appellant concedes that he is not normally entitled to a verbatim record of that proceeding but he asserts that he was entitled to one here for two reasons:

a. The investigating officer promised him the tapes and he relied on that promise to his detriment; and

b. The Article 32 investigation, as the military counterpart of a grand jury proceeding, must be furnished under the Jencks Act, 18 U.S.C. § 3500.

Appellant alleges that the remedy under either ground cited above is dismissal of the charges and specifications. We shall discuss the two contentions in reverse order.

■ The Jencks Act applies to courts-martial. *United States v. Albo*, 22 U.S.C. M.A. 30, 46 C.M.R. 30 (1972); *United States v. Heinel*, 9 U.S.C.M.A. 259, 26 C.M.R. 39 (1958). However, under the Jencks Act, the statement of a witness does not have to be furnished until after the witness has testified. Here the appellant sought the transcript during a pretrial session, prior to the time any witness testified. Although the Court of Military Appeals in *Heinel*[2] indicated the transcript of testimony of an Inspector General investigation should have been given to the accused when he requested it prior to the witnesses' testifying, that decision was based on the case of *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), and not upon the statute which was later enacted to limit the holding of the case. It is with the statute that we are dealing. The act is not an instrument of pretrial discovery for use in planning trial strategy or tactics and appellant's attempt to use the Act for that purpose was improper. The appellant's request was, therefore, premature and the denial by the military judge was not a violation of the Jencks Act. *United States v. Gatto*, 533 F.2d 264 (5th Cir. 1976); *United States v. Peterson*, 524 F.2d 167 (4th Cir. 1975), *cert. denied*, 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976).

We find it inappropriate to reach a decision on the applicability of the Jencks Act to a transcript of the testimony of a prosecution witness at an Article 32 investigation where the request for the transcript is made at the appropriate time in the trial

---

**2.** The Court of Military Appeals in footnote 1 of that case also stated that paragraph 44*h*, Manual for Courts-Martial, United States, 1951,

might be a basis for requiring the prosecution to furnish the transcript.

after the witness has testified.[3] Whether such testimony would be producible under a 1970 amendment to the Act to cover statements made to a grand jury must await decision in a case where that issue is precisely presented. Here, as stated above, the request was premature and no violation of the Act occurred.

The appellant also argues as a basis for error that he relied to his detriment on the investigating officer's promise to furnish the tapes. His attorney maintains that he would have brought his own tape recorder had he known the transcript would not be available.[4] Whether he would have been permitted to use his recorder is a matter within the discretion of the investigating officer. Appellant's only right was to a copy of the investigation which would include "a statement of the substance of the testimony taken on both sides . . ." Paragraph 34e(2), Manual for Courts-Martial, United States, 1969 (Revised edition). He received that copy.

■ Even assuming the appellant would have been permitted to transcribe the testimony and he did not do so, relying on the investigating officer's promise to make the tapes available, we find his counsel's subsequent actions negated such reliance and

released the investigating officer of responsibility for retaining the tapes. The reporter at the Article 32 investigation advised both the investigating officer and the defense counsel that he had only a limited supply of tapes and could not retain them indefinitely. Subsequently on two occasions between the investigation and the first pretrial session, the reporter spoke to defense counsel concerning the tapes. He told defense counsel initially that he was running out of tapes, and subsequently that he had run out and would have to reuse them. He asked defense counsel "if he wanted the tapes or what. . . ." Defense counsel never responded; he did not ask for the tapes until the pretrial session, a time when he must have known they had been reused. The appellant maintained he had no obligation to respond; that the Government had an obligation to maintain the tapes indefinitely. We disagree.

When the defense counsel was told initially that the Government would not give him a verbatim transcript of the investigation,[5] and that only a small supply of tapes was on hand (thereby limiting the time they could be retained), the defense counsel had the option of requesting to make his own transcription (as he later said he would

3. The specific question of the production of a verbatim transcript of testimony at an Article 32 investigation has been addressed in only two military cases, insofar as can be ascertained. Both are decisions by the Air Force Court of Military Review/Board of Review and both involved timely requests. They reach opposite results. The earlier decision, *United States v. Combs*, 28 C.M.R. 866 (A.F.B.R.1959), concluded that the verbatim stenographic notes of an Article 32 investigation are covered by the Act and must be produced. The later case, *United States v. Haywood*, 41 C.M.R. 939 (A.F.C.M.R. 1969), without referring to *Combs*, reached the opposite conclusion. The reasoning behind the latter decision was that as the hearing by the Article 32 investigating officer was judicial in nature, the investigating officer could not be an agent of the Government, and the Act applied only to statements made to an agent of the Government. The *Haywood* decision was prior to the 1970 amendment to the Jencks Act which made grand jury testimony subject to production.

Even if it were determined that the Jencks Act encompassed the verbatim transcript of an

Article 32 investigation, a question would remain as to the sanction to be imposed for a failure to comply. Striking the witness' testimony, declaring a mistrial, dismissal of charges, ordering a rehearing, or directing a verdict in favor of an accused are various alternatives. *United States v. Miranda*, 526 F.2d 1319 (2d Cir. 1975); *United States v. Polizzi*, 500 F.2d 856 (9th Cir. 1974), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975). Considerations such as the willfulness of the Government's action, the lack of good faith, and the harm to an accused must be weighed in determining the sanction to be imposed. *United States v. Miranda, supra*; *United States v. Polizzo, supra*; *United States v. Principe*, 499 F.2d 1135 (1st Cir. 1974).

4. We note that defense counsel did not even ask about a verbatim transcript until after some of the witnesses had testified. Apparently he did not come prepared to transcribe the hearing.

5. Only the witnesses' testimony was being recorded.

have done) or relying on copying the tapes from the reporter. When he chose to follow the latter course, he had the duty to insure that he would make use of the tapes before the reporter had to reuse them. This he failed to do. Any prejudice to the appellant from reuse of the tapes, and none was shown at the trial or before this Court, resulted from the inaction of defense counsel. The military judge properly overruled the motion.

### III

The appellant maintains that the military judge erred in not calling four witnesses requested by appellant. Those witnesses were the convening authority who appointed the court, the chemist who tested the marijuana, the company commander who prepared the morning report forms, and the passenger who was in the car with appellant when the marijuana was discovered. The military judge refused to call the first three as witnesses and refused to grant a continuance until the fourth was physically able to appear. We think the military judge ruled correctly in each case.

■ The convening authority was requested to testify on the systematic exclusion of blacks from court membership. However, there was no indication whatsoever that he had systematically excluded blacks from membership on courts-martial, and in fact he appointed three blacks to appellant's court. Appellant had not spoken with the convening authority, had no idea what testimony he would give on the subject, and offered no evidence that even remotely raised a jurisdictional question about the composition of the court.

■ The appellant did not specifically request the presence of the chemist or the company commander but merely objected to the admissibility of the lab and morning reports on the basis of a denial of his right to confront the witnesses. Admissibility of the lab reports is governed by *United States v. Miller*, 23 U.S.C.M.A. 247, 49 C.M.R. 380 (1974), and *United States v. Evans*, 21 U.S.C.M.A. 579, 45 C.M.R. 353 (1972). Absent a request for the witness

and an indication of the proper purpose for which he was being called, the military judge was not in error by not calling the chemist. Admissibility of the forms showing the unauthorized absences of the accused is governed by paragraph 144*b, d*, MCM, 1969 (Rev.). Where the document is complete and regular on its face, it is admissible as an official record. One of the primary purposes of the hearsay exception is to avoid calling the maker of the document. Here, where the appellant did not request the presence of the company commander who prepared the report and did not point to any deficiency or irregularity, there was no error in not calling the commander.

There is no question but that the passenger in the vehicle appellant was driving when the marijuana was discovered could have been a material witness. Initially he had denied knowing anything about the marijuana and had even denied knowing the appellant, stating he (the passenger) was a hitchhiker. However, he had in fact borrowed the car earlier from his girlfriend and had driven away in it with appellant. Upon a timely request the witness should have been called. *United States v. Carpenter*, 1 M.J. 384 (C.M.A.1976). The appellant made such a request and the trial counsel issued the necessary subpoena, but prior to trial when the witness stated he would invoke his right under the Fifth Amendment and refuse to testify, the appellant withdrew his request for the witness.

At trial, after the prosecution had rested, the individual defense counsel reversed himself and announced that he wanted the witness called, and that he needed an indefinite continuance as the witness was critically ill of a gunshot wound. He stated that the witness had called him in the middle of the night, just a short time before he was shot, and had told him that he would testify for appellant. Counsel stated the witness would testify that appellant had no knowledge of the presence of the marijuana in the trunk and would testify concerning one of the escapes. When the military judge pressed counsel as to whether the

witness had related to him, or to any other member of the defense team, the substance of his testimony, counsel refused to divulge what, if anything, the witness had said.

■ The appellant did not make a showing that the witness would testify and he gave no synopsis of his testimony. There is no doubt in our minds that appellant's request for the witness, coming as it did only after counsel ascertained the witness was unavailable, was nothing more than a stalling tactic which the military judge properly disallowed.

## IV

The appellant asserts the military judge erred in not suppressing the marijuana as the product of an unlawful search. The appellant was stopped in a routine check of post decals and drivers' licenses as he entered the Fort Jackson main gate. When he tendered the driver's license of his passenger as his own, the military police gave both a citation.

After the gate check, and as appellant and his passenger started to depart, a military policeman noticed an open, partially filled bottle of beer on the floor of the car. He requested permission to search the vehicle for other open beverage containers. Appellant granted permission for that limited purpose. While searching, the military policeman found a loaded weapon under the passenger's seat.[6] He thereupon apprehended appellant and the passenger, and with the aid of other military police proceeded to search the rest of the vehicle, including the trunk. As he searched the trunk, he recognized marijuana in a plastic bag and lifted it out. When the appellant saw the military policeman removing the bag from the trunk, he uttered an expletive, bolted from the military police, and fled.

The Government contends that the search was legal, either as incident to a lawful apprehension or as an automobile search

upon probable cause plus exigent circumstances.[7] As we find probable cause plus exigent circumstances, we will refrain from considering the former alternative.

■ The finding of a loaded weapon under the front seat of the automobile gave the military police probable cause to search the rest of the vehicle. There was a likelihood that other weapons or some other form of contraband would be found elsewhere in the vehicle.

■ The search of an automobile with probable cause, on the highway, without a warrant has long been held permissible. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). As was stated most recently in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977):

> [T]his Court has recognized significant differences between motor vehicles and other property which permit warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable in other contexts. . . .
>
> Our treatment of automobiles has been based in part on their inherent mobility, which often makes obtaining a judicial warrant impracticable. Nevertheless, we also have sustained 'warrantless searches of vehicles . . . in cases in which the possibilities of the vehicle's being removed or evidence in it destroyed were remote, if not nonexistent.' *Cady v. Dombrowski*, 413 U.S. 433, 441–442, 93 S.Ct. 2523, 37 L.Ed.2d 706 . . . .
>
> The answer lies in the diminished expectation of privacy which surrounds the automobile:
>
> > 'One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. . . . It travels public thoroughfares where both its occupants and its contents are in plain

---

6. The appellant was charged with, but found not guilty of violating a regulation by having a loaded pistol in the car.

7. It is not contended that the search of the trunk was within the scope of the consent given earlier.

view.' (Citations omitted) 97 S.Ct. at 2484.

*See also United States v. Dennis*, 4 M.J. 765 (A.C.M.R.1977); *United States v. Bishop*, 4 M.J. 671 (A.C.M.R.1977). We find this case falls within the automobile exception discussed above.

## V

The appellant contends that the evidence is insufficient to establish beyond a reasonable doubt that he possessed the marijuana. We disagree. Several factors point to knowing possession: the appellant was with the passenger when he borrowed the car; the undisputed testimony of the female owner established there was no marijuana in it at that time; the marijuana was later found when appellant was driving; and most significantly, the appellant reacted with his remark and by fleeing when the bag was removed from the car. Although the other factors would not be enough to show knowledge, the appellant's reaction unerringly points to only one conclusion—the appellant knew he had been caught with the marijuana. We are convinced beyond a reasonable doubt of his guilt of that offense.

The other errors have been considered but they do not warrant discussion or corrective action.[8]

The findings of guilty and the sentence are affirmed.[9]

Judge DeFORD concurs.

Judge FELDER not participating.

---

8. Our concern with the allegations that the record was not verbatim was answered by the affidavits that were furnished pursuant to the order of the Court.

9. The Secretary of the Army has reduced the period of confinement to two and one-half years.